UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Santosh Bhardwaj,

Plaintiff,

-against-

Prabhu Dayal, Chandini Dayal, and Akansha Dayal,

Defendants.

No.

COMPLAINT



## PRELIMINARY STATEMENT

Through her counsel, the Legal Aid Society, Plaintiff alleges upon knowledge as to herself and her acts, and upon information and belief as to all other matters as follows:

1. Plaintiff Santosh Bhardwaj ("Ms. Bhardwaj" or "Plaintiff") worked in the household of defendants Prabhu Dayal, Chandini Dayal, and Akansha Dayal (collectively, "Defendants Dayal") as a domestic worker for approximately a year.

2. Defendants knowingly and willfully lured Ms. Bhardwaj from India with false promises of a wage of ten dollars per hour, overtime pay, and good working conditions. Instead, Defendants confiscated Ms. Bhardwaj's passport and subjected her to approximately a year of forced labor and psychological coercion in their household, culminating in an incident of sexual harassment.

3. Defendants required Ms. Bhardwaj to work from early morning to late at night, seven days a week. Defendants sent Ms. Bhardwaj's pay to accounts in India which her family could access, but which Ms. Bhardwaj could not access from the United States. Defendants paid her less than a dollar per hour in violation of state and federal employment laws requiring the statutory minimum wage, overtime pay, and spread-of-hours pay.

- 1 -

4. Ms. Bhardwaj seeks redress for these violations of her basic human and civil rights. Accordingly, she brings this action under the Trafficking Victims Protection Reauthorization Act, federal and state employment laws, and common law to recover her promised wages, lawful minimum and overtime wages, the fair and reasonable value of her work, compensation for emotional distress, punitive damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1351, 29 U.S.C. § 201 *et seq.*, and 18 U.S.C. § 1595(a).

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), because these claims are so closely related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. This Court has venue pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in this district, and Defendants reside in this district.

## PARTIES

8. Plaintiff Santosh Bhardwaj is a citizen of India.

9. At the outset of the events that gave rise to this Complaint, Ms. Bhardwaj was living in India. Thereafter, Ms. Bhardwaj was admitted into the United States pursuant to an A-3 Visa, which is available for attendants, servants, personal employees, and members of the immediate families of consular officers. *See* 8 U.S.C. § 1101(a)(15)(A)(iii). She then resided in the United States at all other times relevant to this action, and continues to reside in the City of New York.

10. At all times relevant to this action, Ms. Bhardwaj worked for the Defendants in their residence in New York, New York.

11. At all times relevant to this action, Ms. Bhardwaj was a domestic worker of Defendants as that term is defined by the Fair Labor Standards Act and New York Labor Law.

12. At all times relevant to this action, Ms. Bhardwaj was an employee of Defendants, and was not employed as if she were an employee of any government agency or authority.

13. Ms. Bhardwaj's ability to speak and understand English, and her ability to read or write in any language, was extremely limited during the time she worked in the Defendants' household.

14. At all times relevant to this action, Defendant Prabhu Dayal served as the Consul General of India at the Consulate General of India, New York.

15. At all times relevant to this action, Mr. Dayal resided in New York, NY, and continues to reside in the City of New York.

16. Defendant Chandini Dayal is the wife of Prabhu Dayal, and at all times relevant to this action, she resided with Prabhu Dayal in New York, NY, and continues to reside in the City of New York.

17. Defendant Akansha Dayal is the daughter of Prabhu Dayal and Chandini Dayal, and at all times relevant to this action, upon information or belief, she resided in New York, NY with her parents Prabhu Dayal and Chandini Dayal, and continues to reside in the City of New York.

## STATEMENT OF FACTS

### Recruitment and Trafficking to the United States

18. Ms. Bhardwaj was born in Audhiyar village in Utter Pradesh, India, but moved to New Delhi to work at the age of eighteen.

19. Ms. Bhardwaj first met Defendant Prabhu Dayal in New Delhi, India. Ms. Bhardwaj worked for Defendant Dayal and his family as a domestic worker in India from the years 2002 through 2004.

20. In 2004, Defendant Prabhu Dayal became the Indian Ambassador to Morocco. Ms. Bhardwaj accompanied him and worked for Defendant Prabhu Dayal and his wife Defendant Chandini Dayal in Morocco from 2004 to 2008.

21. In Morocco, Ms. Bhardwaj's duties were to clean the house, wash clothes, cook, iron and perform other domestic services. She lived in a room in Defendants Dayals' house, and worked from approximately seven in the morning until approximately ten at night, or later, every day, except for a one-month leave to visit her family in India.

22. For her work in Morocco, Defendant Prabhu Dayal paid Ms. Bhardwaj approximately 10,000 rupees per month, or between approximately $220 and $250 per month. Defendant Dayal sent Ms. Bhardwaj's pay to a bank in India for her family to access.

23. In or around August of 2008, Defendant Prabhu Dayal was transferred to a post in the United States. In or around September 2008, he moved to New York City along with his wife Defendant Chandini Dayal. Upon information and belief, his daughter Defendant Akansha Dayal was already in the United States.

24. In or around August of 2008, Ms. Bhardwaj returned to India with some members of Defendant Prabhu Dayal's staff. The staff member who held Ms. Bhardwaj's passport did not return it to her after they left the airport. When she returned to India, Ms. Bhardwaj was unemployed.

25. Beginning shortly after his arrival in the U.S., and continuing over the next five months, Defendant Prabhu Dayal repeatedly called Ms. Bhardwaj and tried to persuade her to come work

for him in the United States. He told her he wanted her to work for him in the United States for a period of three years. He promised her wages of ten dollars per hour, better working conditions than she had in India and Morocco, including days off and overtime pay. Defendant Prabhu Dayal also promised Ms. Bhardwaj that he would buy her shoes and clothing. In addition, he promised that he would be able to find employment for her son and daughter. Defendant Prabhu Dayal told Ms. Bhardwaj she would have a good life. He said that eventually he would get another servant but that he and his wife could trust her; they liked her work and honesty and they did not want to lose her. He assured her that to come work for him would be better for her children.

26. Defendant Prabhu Dayal promised Ms. Bhardwaj that her only duties would be to cook food for and take care of himself and his wife Defendant Chandini Dayal, and that if she had to take care of more people, she would be paid more.

27. In reliance on Defendant Prabhu Dayal's promises, Ms. Bhardwaj agreed to work for Defendants Dayal in the U.S.

28. On January 19, 2009, Ms. Bhardwaj signed a contract between herself and Defendant Prabhu Dayal. Upon information and belief, Defendant Prabhu Dayal had signed the contract in New York and sent it to a consular staff member in India, Ravi Chandra, who then presented the contract to Ms. Bhardwaj. Ms. Bhardwaj could not read the contract and it was not explained or translated to her. After signing, she was given a copy and her children explained some of the terms to her. Ms. Bhardwaj had no prior experience making, signing, or reviewing contracts.

29. The contract stated that Ms. Bhardwaj would serve as Defendant Prabhu Dayal's Domestic Assistant for the period of three years, specified a wage of ten dollars per hour, a regular workweek of forty hours per week and five days per week, and overtime wages for any

work beyond those hours. It additionally provided that Defendant Prabhu Dayal agreed not to withhold Ms. Bhardwaj's passport and that Ms. Bhardwaj would not be required to remain on the premises after working hours unless she was properly compensated.

30. Defendant Prabhu Dayal obtained an A-3 Visa for Ms. Bhardwaj, which listed her as a "domestic assistant of Mr. Prabhu Dayal." Defendant Prabhu Dayal sent his staff member, Ravi Chandra, along with Ms. Bhardwaj to her visa interview. When the interviewer asked why she was going to the United States and with whom, Ms. Bhardwaj replied that she was going to work for Defendant Prabhu Dayal. The interviewer asked whether she had worked for Defendant Dayal before, and Ms. Bhardwaj replied that she had, including in Morocco. She then showed the interviewer the contract.

31. Ravi Chandra later informed Ms. Bhardwaj that her visa had been granted, and arranged for her flight on behalf of Defendant Prabhu Dayal.

32. Prior to Ms. Bhardwaj's flight, Ravi Chandra gave her back her passport at the airport. Ms. Bhardwaj traveled from India to the United States on February 23, 2009, with two children of consular staff members.

**Forced Labor and Exploitation in the United States**

33. On the day that Ms. Bhardwaj arrived in the United States, Defendant Prabhu Dayal took her passport.

34. During the first one to two weeks after her arrival in the U.S., Ms. Bhardwaj asked Defendant Prabhu Dayal for her passport. He refused to give it back to her. Defendants never returned Ms. Bhardwaj's passport to her.

35. Once she arrived in the U.S., Ms. Bhardwaj lived in a room in the Defendants' home, which was in the Consulate of India in New York City. She was the only worker in the household.

36. Ms. Bhardwaj had believed that she would be allowed to hold her own passport and live elsewhere, only coming to the Dayal residence during work hours, because her contract provided that she could not be required to remain on the premises after working hours unless she was properly compensated. However, on the day she arrived Defendant Prabhu Dayal told her that he would keep her passport and that she had to live in the house. He told her that what he said mattered, not the contract.

37. While she worked for Defendants, Ms. Bhardwaj had to sleep on a mattress on the floor in a small storage room, which was just big enough for the mattress and a small chest for her clothes. It did not have a closet, table or chair, and had only one window. On the walls were shelves containing guest linens and other storage items. The Dayals' apartment had three guest bedrooms which were sometimes empty and other times in use, but Ms. Bhardwaj was not allowed to sleep in those rooms.

38. Ms. Bhardwaj had to keep her toiletries in her room and bring them back and forth with her to use the bathroom. The Dayals' household had one bathroom per bedroom, as well as a bathroom near the dining table. Ms. Bhardwaj used the bathroom by the dining table or looked for a free bathroom among the guest rooms. At times there was no bathroom available in the house for her to use. When this happened she had to go to the security guard, who was an acquaintance of hers, and he helped her find a bathroom to use elsewhere in the consulate building.

39. During the entire time Ms. Bhardwaj worked there, Defendant Prabhu Dayal's daughter Defendant Akansha Dayal lived in the Dayal residence.

40. Ms. Bhardwaj cooked meals, ironed, washed, dried, folded and stored clothing, made beds, swept, mopped, vacuumed, dusted, cleaned toilets, washed windows, polished silver, served food and tea, provided on-call service, and polished shoes, among other tasks, for all members of the family.

41. Ms. Bhardwaj was required to work from approximately seven in the morning until approximately ten each night, or later. When Defendants hosted guests, she often had to work as late as one in the morning. Ms. Bhardwaj had to cook for these guests, prepare for their visit, and clean up afterwards before going to sleep. Defendants had guests several times a week, and on many weekends, hosted parties.

42. Ms. Bhardwaj was not paid extra for her work into the early hours of the morning. Although some of the guests at large parties told Ms. Bhardwaj that they had given Defendant Prabhu Dayal tips for her, Defendant Prabhu Dayal did not give any tips to Ms. Bhardwaj.

43. For the duration of her work for Defendants Dayal in New York, Ms. Bhardwaj was not allowed to take off any holidays, and worked every day. Ms. Bhardwaj was forced to work even when she did not feel well. When she had severe headaches and asked Defendant Chandini Dayal if she could rest, Chandini Dayal would give her an aspirin and tell her to keep working if there was a party to prepare for.

44. Ms. Bhardwaj usually ate meals after she had served the family and/or guests, or after she had completed her assigned tasks for the morning or afternoon. She was usually able to take only a short break of approximately fifteen to twenty-five minutes for lunch and dinner.

45. Ms. Bhardwaj did not generally have time for herself during the day because she was always kept busy by Defendants' orders. Chandini Dayal gave Ms. Bhardwaj tasks to keep her continuously busy, saying that she had come to work and they had brought her to the U.S. to work.

46. Defendants Dayal did not provide Ms. Bhardwaj with new shoes or clothing, and instead gave her only soap and toothpaste.

47. For the duration of the time she worked in the household, Defendant Prabhu Dayal told Ms. Bhardwaj that he was sending money to her children in India via her bank account. He also said that he was holding money for her.

48. On one occasion Ms. Bhardwaj asked Defendant Prabhu Dayal how much he was holding for her, and he told her that she did not need to have anything to do with it, that he was holding it for her and that was it.

49. Ms. Bhardwaj did not have personal knowledge of how much money Defendant Prabhu Dayal was paying her. From her children, Ms. Bhardwaj knew that Defendant Prabhu Dayal had deposited some money in an account for her family to access. Upon information and belief, over the course of her employment with Defendants, Defendant Prabhu Dayal made deposits for Ms. Bhardwaj in Indian rupees which amounted to an average of approximately $300 per month.

50. Ms. Bhardwaj was given no cash in hand during the entire time she worked in Defendants' household.

51. Defendants kept Ms. Bhardwaj continuously busy so that she had almost no time to leave Defendants' house alone. When she did the Defendants' grocery shopping in Jackson Heights, Ms. Bhardwaj was escorted by the Defendants' driver or by Defendant Chandini Dayal. The only times Ms. Bhardwaj was able to leave the household alone was on occasion when

Defendants Dayal were at an event and she was able to take a short break and go to Central Park, which was nearby.

52. Neither Defendants nor anyone else oriented Ms. Bhardwaj to New York, or explained to her how to use taxis, buses, or the subway. She had no sense of where Defendants' home was located in the city or on a map.

53. Ms. Bhardwaj believed that if she went out she would be arrested and deported because she was without her passport, which Defendant Prabhu Dayal kept in his possession.

54. Defendants Dayal did not allow Ms. Bhardwaj to call her family in India from their house telephone. Ms. Bhardwaj sometimes called her family from Defendant Prabhu Dayal's office, but when he found out, he scolded her. Ms. Bhardwaj then called from Defendants' house phone when they were out.

55. Several times, Defendant Chandini Dayal threatened to send Ms. Bhardwaj back to India if she did not do as told, or did not work faster. On one such occasion Defendant Chandini Dayal gave Ms. Bhardwaj a large load of clothes to iron and shoes to polish, and told her to do it without saying anything or she would send her back to India.

56. Because of Defendants' threats and other statements, Ms. Bhardwaj believed Defendants had the power to restrain her and return her to India, and understood these threats to mean that if she did not continue to work under these circumstances and/or Defendants took such action, they would not pay her what they had promised and/or what she was owed and that she would suffer other potential harmful consequences.

57. Defendants' conduct described above was willful and intentional.

## Violations of the Employment Laws and Breach of Contract

58. At all relevant times to this action, Defendant Prabhu Dayal had the power to hire and fire Ms. Bhardwaj, and Defendant Chandini Dayal had the power to terminate Ms. Bhardwaj's employment.

59. At all relevant times to this action, Defendants Prabhu and Chandini Dayal had the power to set Ms. Bhardwaj's schedule.

60. At all relevant times to this action, all Defendants had the power to supervise Ms. Bhardwaj.

61. At all relevant times to this action, all Defendants had the power to control Ms. Bhardwaj's work conditions in the household.

62. At all relevant times to this action, Defendant Prabhu Dayal had the power to determine the rate and method of payment of Ms. Bhardwaj's wages.

63. At all relevant times to this action, all Defendants were employers of Ms. Bhardwaj as defined under the employment laws as Defendants acted directly or indirectly in the interest of an employer in relation to their employees. 29 U.S.C. § 203(d); New York Labor Law § 190.

64. At all relevant times to this action, all Defendants employed Ms. Bhardwaj as defined under the employment laws as Defendants suffered or permitted her to work. 29 U.S.C. § 203(g); New York Labor Law § 190.

65. Upon information and belief, Ms. Bhardwaj's wages were not paid in correspondence to her hours worked.

66. Defendants did not pay Ms. Bhardwaj the statutory federal or state minimum wage rate.

67. Defendants did not pay Ms. Bhardwaj the required overtime pay over forty-four hours of work per week as required by the New York state law.

68. Defendants did not inform Ms. Bhardwaj about the minimum wage or overtime pay requirements.

69. Defendants did not pay Ms. Bhardwaj spread of hours pay as required under New York state law: an additional hour of pay for those days in which the interval between the time Ms. Bhardwaj each started and ended work was more than ten hours.

70. Defendants did not maintain proper records for Ms. Bhardwaj's work schedules and pay, or provide her with wage statements as required by both state and federal law.

71. At all relevant times to this action, Defendants did not post any information indicating the laws regarding the minimum wage and overtime pay, or otherwise provide Ms. Bhardwaj any information about their rights under the federal or state employment laws.

72. Defendants' failure to inform Ms. Bhardwaj about her rights was willful and/or intentional.

73. Defendants did not pay Ms. Bhardwaj the hourly rate or overtime pay as agreed in the Parties' oral contract, and as referenced in the written document the Parties signed.

74. Defendants did not comply with the other terms of the written document, which was required to obtain Ms. Bhardwaj's visa. *See* U.S. Department of State Foreign Affairs Manual, Volume 9, Section 41.22, *available at* http://www.state.gov/documents/organization/87177.pdf. For example, Defendants held her passport and kept her on the premises working long after the schedule of forty hours per week outlined in the document.

**Sexual Harassment and Escape**

75. In or around January 2010, Ms. Bhardwaj's husband in India needed an operation, and her children needed money to pay for it. Ms. Bhardwaj decided to ask Defendant Prabhu Dayal for the money he said he was holding for her.

76. Ms. Bhardwaj asked for the money three times in one day, and he twice said they would talk later. On that day, Defendant Chandini Dayal was in India, and Defendant Akansha Dayal was out of the house. That evening Ms. Bhardwaj made her third request for the money when Defendant Prabhu Dayal was seated in the living room. Defendant Prabhu Dayal said that he would give her some work to do in order to get the money. He told her she would have to give him a massage for pain in his legs.

77. Ms. Bhardwaj interpreted Defendant Prabhu Dayal's statement as a request for sexual contact of some form. In her culture, it was shocking and offensive for a married man to request any type of physical contact from a married woman. Therefore, she was scared by his request.

78. At the time of this request Ms. Bhardwaj immediately left the living room. Defendant Akansha Dayal returned home shortly after.

79. Two or three days later, when Ms. Bhardwaj's acquaintance, the security guard, was alone, she told him about Defendant Dayal's request for a massage. He was shocked. He handed her a few dollars to assist her if she escaped.

80. Defendant Chandini Dayal returned from India about a week later. Ms. Bhardwaj asked her for some of her money in order to send it for her husband's operation. Defendant Chandini Dayal refused, and threatened Ms. Bhardwaj that she would send her back to India if she continued to talk about money.

81. Ms. Bhardwaj worked for a few days more with no time to create any plan to escape. On a day in or around the last week in January 2010, Defendant Prabhu Dayal was out at a meeting, Defendant Chandini Dayal was in her room with the doors closed, and Defendant Akansha Dayal was out of the house at work. Ms. Bhardwaj slipped out the back door, took the elevator down to the main level of the consulate, and left through the front doors because no security guard was

there at the time. All she was able to bring with her were a few clothes, and the few dollars that the security guard gave her. She called one family she had met through the security guard and they came to pick her up in their car.

82. Ms. Bhardwaj suffered severe emotional distress as a result of Defendants' coercion and exploitation, and Defendants Prabhu Dayal's sexual advance.

## FIRST CAUSE OF ACTION

### The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008

### (18 U.S.C. § 1595)

83. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

84. Plaintiff is a victim of the following violations of Title 18, Chapter 77 of the United States Code: 18 U.S.C. §§ 1589, 1590, and 1592.

85. As set forth in 18 U.S.C. § 1595, Plaintiff may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in a violation" of these provisions.

86. Defendants were perpetrators of the violations of 18 U.S.C. §§ 1589, 1590, and 1592.

87. Defendants knowingly benefited, financially or by receiving anything of value from participation in a venture which each Defendant knew or should have known engaged in violations of 18 U.S.C. §§ 1589, 1590, and 1592.

**88.** Defendants acted with reckless or callous indifference to Plaintiff's federally protected rights and/or otherwise engaged in outrageous conduct.

## A. Forced Labor (18 U.S.C. § 1589)

- 14 -

89. Defendants subjected Plaintiff to forced labor in violation of 18 U.S.C. § 1589.

90. Defendants knowingly threatened Plaintiff with physical restraint and serious harm in order to obtain Plaintiff's labor or services in violation of 18 U.S.C. § 1589(a)(1) and (2).

91. Defendants knowingly abused or threatened abuse of law or legal process in order to obtain Plaintiff's labor or services in violation of 18 U.S.C. § 1589(a)(3).

92. Defendants knowingly obtained Plaintiff's labor or services by means of a scheme, plan or pattern intended to cause Plaintiff to believe that if she did not perform such labor or services that she would suffer serious harm or physical restraint in violation of 18 U.S.C. § 1589(a)(4).

## B. Trafficking with respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. § 1590)

93. Defendants knowingly recruited, transported, harbored, provided and/or obtained Plaintiff for labor or services in violation of 18 U.S.C. §§ 1589 and 1592, and therefore violated 18 U.S.C. § 1590.

## C. Unlawful Conduct with respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. § 1592)

94. Defendants knowingly concealed, removed, confiscated, and/or possessed Plaintiff's passports and other immigration-related documents in the course of a violation of and/or with the intent to violate 18 U.S.C. §§ 1589 and 1590 and therefore violated 18 U.S.C. § 1592.

95. Defendants knowingly concealed, removed, confiscated, and/or possessed Plaintiff's passport and other immigration-related documents to prevent or restrict or to attempt to prevent or restrict, without lawful authority, Plaintiff's liberty to move or to travel, in order to maintain Plaintiff's labor or services. Plaintiff is a victim of a severe form of trafficking as defined in the Trafficking Victims Protection Act of 2003, section 103. Therefore, Defendants' acts violated 18 U.S.C. § 1592.

96. As a proximate result of the conduct of Defendants, Plaintiff has suffered injuries to her person and property, and other damages.

97. Plaintiff is entitled to recover compensatory and punitive damages in an amount to be proven at trial, including attorneys' fees.

## SECOND CLAIM FOR RELIEF

### Federal Labor Standards Act (FLSA) Minimum Wage Violation

#### (29 U.S.C. § 201, et seq.)

98. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

99. Because Plaintiff was employed as a domestic worker in a household at times relevant to this action, Plaintiff was engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 202(a).

100. Section 6(a) of the FLSA, 29 U.S.C. § 206(a), provides that any employee engaged in commerce shall be paid wages at a specific rate during the period of each Plaintiff's employment.

101. In all periods of Plaintiff's employment, Defendants knowingly paid Plaintiff an hourly rate far less than the federal minimum wage, in violation of 29 U.S.C. §§ 206 and 216.

102. Defendants' willful and intentional failure to pay Plaintiff the minimum wage violates 29 U.S.C. § 201, et seq. and U.S. Department of Labor regulations.

103. Defendants did not act in good faith when they failed to comply with federal minimum wage law.

104. Plaintiff is entitled to an award of damages for unpaid minimum wages in amounts equal to the proper federal minimum wage she should have been paid, liquidated damages, attorneys' fees, and costs.

## THIRD CLAIM FOR RELIEF

### New York State Minimum Wage Violation

(N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.*)

105. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

106. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

107. At all times relevant to this action, Defendants were employers within the meaning of the New York Labor Law.

108. In all periods of Plaintiff's employment, Defendants failed to pay Plaintiff the proper minimum wage, as required by New York state law. N.Y. Lab. L. § 650 et seq.

109. Defendants' failure to pay Plaintiff the minimum wage was willful and/or not in good faith.

110. Plaintiff is entitled to an award of damages for unpaid minimum wages in an amount equal to the proper state minimum wage she should have been paid, liquidated damages, attorneys' fees, and costs.

## FOURTH CLAIM FOR RELIEF

### New York State Overtime Violation

(N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.*, 12 N.Y.C.R.R. § 142-2.2)

111. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

112. Defendants failed to pay Plaintiff overtime premiums for her work in excess of forty-four (44) hours per week, as required for a residential employee in violation of New York Labor

Law §§ 190 *et seq.* and 650 *et seq.* and New York Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.2.

113. Defendants' failure to pay Plaintiff overtime pay was willful and/or not in good faith.

114. Plaintiff is entitled to an award of damages for overtime pay for work over forty-four (44) hours per week in an amount equal to the proper overtime premiums she should have been paid, liquidated damages, attorneys' fees, and costs.

### FIFTH CLAIM FOR RELIEF

### New York State Spread Of Hours Violation

(N.Y. Lab. L. §§ 190 *et seq.*, 650 *et seq.*, and 12 N.Y.C.R.R. § 142-2.4)

115. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

116. Defendants failed to pay Plaintiff an extra hour's pay for every day that she worked in which the interval between her start and end time exceeded ten hours, in violation of N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.* and New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.4.

117. Defendants' failure to pay Plaintiff spread of hours pay was willful and/or not in good faith.

118. Plaintiff is entitled to an award of an extra hour's pay for every day that Plaintiff worked in excess of ten hours, liquidated damages, attorneys' fees, and costs.

### SIXTH CLAIM FOR RELIEF

### New York State Unpaid Wages

(N.Y. Lab. L. §§ 190 *et seq.*)

119. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

120. The New York Labor Law requires employers to pay manual laborers each week, and to pay promised wages for every hour worked. N.Y. Lab. L. §§ 190, 191, *et seq*.

121. Defendants failed to pay Plaintiff the promised wage of $10.00 per hour and the corresponding overtime rate for hours over forty (40) per week, at $15.00 per hour.

122. Defendants' failure to pay Plaintiff the promised wages was willful and/or not in good faith.

123. Plaintiff is entitled to her promised wages, liquidated damages, attorneys' fees and costs.

## SEVENTH CLAIM FOR RELIEF

### Breach of Contract

124. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

125. Plaintiff and Defendant Prahbu Dayal entered into an oral agreement, whereby Plaintiff agreed to work for Defendants, and the Defendants agreed to pay Plaintiff $10 per hour for a 40-hour workweek, and overtime pay if work was performed beyond 40 hours a week, among other promises.

126. The document signed by the Parties reflected the hours of work and payrate that the Parties had agreed to.

127. Defendant Prahbu Dayal breached the terms of the Parties' oral contract.

128. Plaintiff is entitled to recover damages in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

### Unjust Enrichment (In the Alternative)

129. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

130. Plaintiff rendered services as cook, housekeeper, on-call servant, caterer, inter alia, in good faith and with the expectation that she would be fairly compensated for such services.

131. Defendants accepted those services and in turn failed to compensate Plaintiff for the reasonable and/or fair market value of her services.

132. Defendants have been unjustly enriched at Plaintiff's expense.

133. Defendants consciously or recklessly disregarded Plaintiff's rights.

134. Equity and good conscience require restitution to Plaintiff for the reasonable value of these services.

135. Plaintiff is entitled to recover damages in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

### Quantum Meruit (In the Alternative)

136. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

137. Plaintiff rendered services as cook, housekeeper, on-call servant, caterer, inter alia, in good faith and with the expectation that she would be fairly compensated for such services.

138. Defendants accepted those services and in turn failed to compensate Plaintiff for the reasonable and/or fair market value of her services.

139. Defendants have benefited from these services at Plaintiff's expense.

140. Defendants consciously or recklessly disregarded the Plaintiff's rights.

141. Plaintiff is entitled to recover damages in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF

### Conversion

142. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

143. Defendants wrongfully took and assumed ownership over Plaintiff's passport and immigration-related documents without her permission and to the exclusion of Plaintiff's ownership rights in the property.

144. As a result, Plaintiff is entitled to return of the property and to compensatory and punitive damages in an amount to be proven at trial.

## ELEVENTH CLAIM FOR RELIEF

### Trespass to Chattel (In the Alternative)

145. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

146. At all times mentioned in the Complaint, Plaintiff had legal title to her passport and other immigration-related documents.

147. Defendants intentionally interfered with Plaintiff's use or possession of her passport and other immigration-related documents.

148. Defendants' trespass and interference proximately caused damage to Plaintiff, including but not limited to, damage to Plaintiff's use and enjoyment of her passport and immigration-related documents.

149. Plaintiff is entitled to the return of the property and all damages sustained as a result of such trespass, in an amount to be determined at trial.

# PRAYER FOR RELIEF

WHEREFORE, based on the allegations set forth above and/or additional facts that will be revealed through discovery Plaintiff respectfully request that a judgment be granted as follows:

1. Awarding Plaintiff unpaid minimum wages, plus liquidated damages, interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 201 *et seq.*;

2. Awarding Plaintiff unpaid wages, including promised wages, minimum wages, overtime pay, and spread-of-hours pay, plus liquidated damages, interest, attorneys' fees and costs, pursuant to New York Labor Law § 190, *et seq.*;

3. Awarding Plaintiff punitive and compensatory damages for pain and suffering, the reasonable and/or fair market value of services provided to Defendants, attorneys' fees and costs, and such other relief as the Court may deem just and proper pursuant to the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. § 1595;

4. Awarding Plaintiff pre-judgment interest and post-judgment interest as allowed by law;

5. Directing Defendants to turn over Plaintiff's passport and all other documents belonging to her; and awarding Plaintiff compensatory and punitive damages due to the conversion and/or trespass of her passport and other documents;

6. Declaring the oral contract between the parties a valid contract and awarding Plaintiff the value of the terms of the contract; or in the alternative, awarding Plaintiff the reasonable and/or fair market value of services provided to Defendants in good faith pursuant to Plaintiff's claims of unjust enrichment or quantum meruit;

7. Awarding Plaintiff such other legal and equitable relief as the Court may deem just and proper.

Dated: New York, New York
June 20, 2011

Respectfully submitted,
THE LEGAL AID SOCIETY

By: _____

Steven R. Banks, Attorney in Charge
Adriene L. Holder, Attorney in Charge,
Civil Practice
Karen Cacace, Supervising Attorney
Hollis V. Pfitsch, of counsel
Employment Law Unit
199 Water Street, 3rd Floor
New York, New York 10038
(212) 577-3465 (phone)
(KCacace@legal-aid.org)
(HVPfitsch@legal-aid.org)