UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Santosh Bhardwaj,

                     Plaintiff,

            -against-

Prabhu Dayal, Chandini Dayal, and Akansha Dayal,

                  Defendants.

RECEIVED

2011 AUG 12  P 6: 10

U S DISTRICT COURT SDNY

No. 11 Civ. 4170 (AKH)

**FIRST AMENDED
COMPLAINT**

## PRELIMINARY STATEMENT

Through her counsel, The Legal Aid Society and Outten & Golden LLP, Plaintiff alleges upon knowledge as to herself and her acts, and upon information and belief as to all other matters as follows:

1.  Plaintiff Santosh Bhardwaj ("Ms. Bhardwaj" or "Plaintiff") worked in the household of Defendants Prabhu Dayal ("Mr. Dayal"), Chandini Dayal ("Mrs. Dayal"), and Akansha Dayal ("Akansha Dayal") (collectively, "Defendants") as a domestic worker for approximately one year.

2.  Defendants knowingly and willfully lured Ms. Bhardwaj from India with false promises of a wage of ten dollars per hour, overtime pay, and good working conditions. Instead, Defendants confiscated Ms. Bhardwaj's passport and subjected her to approximately one year of forced labor and psychological coercion in their household.

3.  Defendants generally required Ms. Bhardwaj to work from early morning to late at night, seven days a week. Defendants sent Ms. Bhardwaj's pay to accounts in India which her family could access, but which Ms. Bhardwaj could not access from the United States. Defendants did

not pay the statutory minimum wage, overtime pay, and spread of hours pay required by state and federal employment laws.

4. Ms. Bhardwaj seeks redress for these violations of her basic human and civil rights. Accordingly, she brings this action under the Trafficking Victims Protection Reauthorization Act, federal and state employment laws, and common law to recover her promised wages, lawful minimum and overtime wages, the fair and reasonable value of her work, compensation for emotional distress, punitive damages, and attorneys' fees and costs.

5. Ms. Bhardwaj also seeks redress for retaliation by Defendants. Immediately after Ms. Bhardwaj filed the Complaint, Defendants retaliated against her by, among other things, using the media and Mr. Dayal's authority as General Consul to formally request Ms. Bhardwaj's removal from the United States.

### JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1351, 29 U.S.C. § 201 *et seq.*, and 18 U.S.C. § 1595(a).

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), because these claims are so closely related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. This Court has venue pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in this district, and Defendants reside in this district.

9. The Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

10. Plaintiff Santosh Bhardwaj is a citizen of India.

11. At the outset of the events that gave rise to the Complaint, Ms. Bhardwaj was living in India. Thereafter, Ms. Bhardwaj was admitted into the United States pursuant to an A-3 Visa, which is available for attendants, servants, personal employees, and members of the immediate families of consular officers. *See* 8 U.S.C. § 1101(a)(15)(A)(iii). She then resided in the United States at all other times relevant to this action, and continues to reside in New York, New York.

12. At all times relevant to this action, Ms. Bhardwaj worked for the Defendants in their residence in New York, New York.

13. At all times relevant to this action, Ms. Bhardwaj was a domestic worker of Defendants as that term is defined by the Fair Labor Standards Act and New York Labor Law.

14. At all times relevant to this action, Ms. Bhardwaj was an employee of Defendants, and not of any government agency or authority.

15. Ms. Bhardwaj's ability to speak and understand English, and her ability to read or write in any language, was extremely limited during the time she worked in the Defendants' household.

16. At all times relevant to this action, Mr. Dayal served as the Consul General of India at the Consulate General of India in New York.

17. At all times relevant to this action, Mr. Dayal resided in New York, New York, and, upon information and belief, continues to reside in New York, New York.

18. Mrs. Dayal is the wife of Mr. Dayal, and at all times relevant to this action, she resided with Mr. Dayal in New York, New York, and, upon information and belief, continues to reside in New York, New York.

19. Akansha Dayal is the daughter of Mr. and Mrs. Dayal, and at all times relevant to this action, she resided in New York, New York, with her parents, and upon information or belief, continues to reside in New York, New York.

## STATEMENT OF FACTS

### Recruitment and Trafficking to the United States

20. Ms. Bhardwaj first met Mr. Dayal in New Delhi, India. Ms. Bhardwaj worked for Mr. and Mrs. Dayal as a domestic worker in India from the years 2002 through 2004.

21. In 2004, Mr. Dayal became the Indian Ambassador to Morocco. Ms. Bhardwaj accompanied him and worked for Mr. and Mrs. Dayal in Morocco from 2004 to 2008.

22. In or around August of 2008, Mr. Dayal was transferred to a post in the United States. In or around September 2008, he moved to New York City along with Mrs. Dayal. Upon information and belief, his daughter, Akansha Dayal, was already in the United States.

23. In or around August of 2008, Ms. Bhardwaj returned to India from Morocco with some members of Mr. Dayal's staff.

24. Beginning shortly after his arrival in the United States, and continuing over the next five months, Mr. Dayal repeatedly called Ms. Bhardwaj and tried to persuade her to come work for him in the United States. He promised her wages of ten dollars per hour and better working conditions than she had in India and Morocco, including days off and overtime pay. Mr. Dayal told Ms. Bhardwaj she would have a good life. He assured her that to come work for him would be better for her children.

25. Mr. Dayal told Ms. Bhardwaj that her duties would be to cook food for and take care of himself and his family.

- 4 -

26. In reliance on Mr. Dayal's promises, Ms. Bhardwaj agreed to work for Defendants in the United States.

27. On or about January 19, 2009, Ms. Bhardwaj signed a contract between herself and Mr. Dayal. Upon information and belief, Mr. Dayal had signed the contract in New York and sent it to a consular staff member in India, Ravi Chandra, who then presented the contract to Ms. Bhardwaj. Ms. Bhardwaj could not read the contract and it was not explained or translated to her. Ms. Bhardwaj had no prior experience making, signing, or reviewing contracts. Ms. Bhardwaj's children later explained some of the terms to her.

28. The contract stated that Ms. Bhardwaj would serve as Mr. Dayal's Domestic Assistant for a period of three years, specified a wage of ten dollars per hour, a regular workweek of forty hours per week and five days per week, and overtime wages for any work beyond those hours. It additionally provided that Mr. Dayal agreed not to withhold Ms. Bhardwaj's passport and that Ms. Bhardwaj would not be required to remain on the premises after working hours unless she was properly compensated. The contract is in English, a language Ms. Bhardwaj cannot speak or read.

29. Mr. Dayal obtained an A-3 Visa for Ms. Bhardwaj, which listed her as a "domestic assistant of Mr. Prabhu Dayal."

30. Ms. Bhardwaj traveled from India to the United States on or about February 23, 2009, with two children of consular staff members. Upon information and belief, Ravi Chandra arranged for Ms. Bhardwaj's flight on behalf of Mr. Dayal.

### Forced Labor and Exploitation in the United States

31. On the day that Ms. Bhardwaj arrived in the United States, Mr. Dayal took her passport.

32. During the first one to two weeks after her arrival in the U.S., Ms. Bhardwaj asked Mr. Dayal for her passport. He did not give it back to her then or at any time.

33. Once she arrived in the United States, Ms. Bhardwaj lived in a room in Defendants' home, which was in the Consulate of India in New York, New York.

34. During the time Ms. Bhardwaj worked there, Akansha Dayal lived in the Dayal residence.

35. Ms. Bhardwaj cooked meals, ironed, washed, dried, folded and stored clothing, made beds, swept, mopped, vacuumed, dusted, cleaned toilets, washed windows, polished silver, served food and tea, provided on-call service, and polished shoes, among other tasks, for all members of the Dayal family.

36. Ms. Bhardwaj was generally required to begin work from between approximately seven and eight in the morning. She was generally required to work until approximately nine or ten each night, or later. When Defendants had parties, she often had to work until one in the morning or later. Ms. Bhardwaj usually had to cook for guests, prepare for their visit, and clean up afterwards before going to sleep. Defendants usually had guests several times a week, and on many weekends hosted parties.

37. Ms. Bhardwaj did not generally have time for herself during the day because she was always kept busy by Defendants' orders. Mrs. Dayal usually gave Ms. Bhardwaj tasks to keep her continuously busy, and said that she had come to work and they had brought her to the United States to work. Ms. Bhardwaj sometimes took short breaks, and occasionally had a few hours to herself.

38. For the duration of the time she worked in the household, Mr. Dayal told Ms. Bhardwaj that he was sending money to her children in India via her bank account. He also said that he was holding money for her.

39. On one occasion Ms. Bhardwaj asked Mr. Dayal how much he was holding for her, and he told her that she did not need to know, that he was holding it for her and that she would get it when she returned to India.

40. Mr. Dayal paid Ms. Bhardwaj by depositing money in an account in India for Ms. Bhardwaj's family to access. Upon information and belief, over the course of her employment with Defendants, Mr. Dayal made deposits in Indian rupees which amounted to an average of approximately $300 per month.

41. Mrs. Dayal threatened to send Ms. Bhardwaj back to India if she did not do her work properly.

42. Because of Defendants' threats and other statements, Ms. Bhardwaj believed Defendants had the power to restrain her and return her to India, and understood these threats to mean that if she did not continue to work under these circumstances and/or Defendants took such action, they would not pay her what they had promised and/or what she was owed and that she would suffer other potential harmful consequences.

43. Defendants' conduct described above was willful and intentional.

### Violations of the Employment Laws and Breach of Contract

44. At all relevant times to this action, Mr. Dayal had the power to hire and fire Ms. Bhardwaj, and Mrs. Dayal had the power to terminate Ms. Bhardwaj's employment.

45. At all relevant times to this action, Mr. and Mrs. Dayal had the power to control Ms. Bhardwaj's schedule.

46. At all relevant times to this action, all Defendants had the power to supervise Ms. Bhardwaj.

47. At all relevant times to this action, all Defendants had the power to control Ms. Bhardwaj's work conditions in the household.

48. At all relevant times to this action, Mr. Dayal had the power to determine the rate and method of payment of Ms. Bhardwaj's wages.

49. At all relevant times to this action, all Defendants were employers of Ms. Bhardwaj as defined under the employment laws as Defendants acted directly or indirectly in the interest of an employer in relation to Ms. Bhardwaj, their employee. 29 U.S.C. § 203(d); New York Labor Law § 190.

50. At all relevant times to this action, all Defendants employed Ms. Bhardwaj as defined under the employment laws as Defendants suffered or permitted her to work. 29 U.S.C. § 203(g); New York Labor Law § 190.

51. Upon information and belief, Ms. Bhardwaj's wages were not paid in correspondence to her hours worked.

52. Defendants did not pay Ms. Bhardwaj the statutory federal or state minimum wage rate.

53. Defendants did not pay Ms. Bhardwaj the required overtime pay over forty-four hours of work per week as required by the New York state law.

54. Defendants did not inform Ms. Bhardwaj about the minimum wage or overtime pay requirements.

55. Defendants did not pay Ms. Bhardwaj spread of hours pay as required under New York state law: an additional hour of pay for those days in which the interval between the time Ms. Bhardwaj started and ended work was more than ten hours.

- 8 -

56. Upon information and belief, Defendants did not maintain proper records for Ms. Bhardwaj's work schedules and pay. Defendants did not provide her with wage statements as required by both state and federal law.

57. At all relevant times to this action, Defendants did not post any information indicating the laws regarding the minimum wage and overtime pay, or otherwise provide Ms. Bhardwaj any information about her rights under the federal or state employment laws.

58. Defendants' failure to inform Ms. Bhardwaj about her rights was willful and/or intentional.

59. Defendants did not pay Ms. Bhardwaj at the agreed hourly rate of $10 per hour.

60. Defendants did not comply with the other terms of the written document, which, upon information and belief, was required to obtain Ms. Bhardwaj's visa. *See* U.S. Department of State Foreign Affairs Manual, Volume 9, Section 41.22, *available at* http://www.state.gov/documents/organization/87177.pdf. For example, Defendants held her passport and kept her on the premises working long after the agreed schedule of forty hours per week without paying overtime as outlined in the document.

61. Because of Defendants' conduct, on a day in or around the last week in January 2010, Ms. Bhardwaj left Defendants' home and did not return.

62. Ms. Bhardwaj suffered severe emotional distress as a result of Defendants' conduct.

**Retaliation**

63. Ms. Bhardwaj filed the Complaint in this action on June 20, 2011.

64. Upon information and belief, on or about June 21, 2011, Mr. Dayal and/or his former attorney, Ravi Batra, released a photograph of Ms. Bhardwaj to the press.

65. Upon information and belief, on June 25, 2011, Mr. Batra, the Defendants' former attorney, sent a letter to Secretary of Homeland Security Janet Napolitano and United States Attorney General Eric Holder, with a copy to Secretary of State Hillary Clinton, calling for Ms. Bhardwaj's deportation.   Upon information and belief, Defendants then issued that same letter to the press.

66. Upon information and belief, also on June 25, 2011, Mr. Batra, the Defendants' former attorney, announced, through a press release, that a rally and press conference would be held on June 26, 2011, at 12 p.m. at City Hall.   The press release referred to Ms. Bhardwaj's Complaint in this action and to Mr. Batra's letter calling for her deportation.

67. Upon information and belief, the rally and press conference announced by Mr. Batra was held on June 26, 2011.

### FIRST CAUSE OF ACTION

### The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008

### (18 U.S.C. § 1595)

68. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

69. Plaintiff is a victim of the following violations of Title 18, Chapter 77 of the United States Code: 18 U.S.C. §§ 1589, 1590, and 1592.

70. As set forth in 18 U.S.C. § 1595, Plaintiff may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in a violation" of these provisions.

71. Defendants were perpetrators of the violations of 18 U.S.C. §§ 1589, 1590, and 1592.

72. Defendants knowingly benefited, financially or by receiving anything of value from participation in a venture which each Defendant knew or should have known engaged in violations of 18 U.S.C. §§ 1589, 1590, and 1592.

73. Defendants acted with reckless or callous indifference to Plaintiff's federally protected rights and/or otherwise engaged in outrageous conduct.

## A. Forced Labor (18 U.S.C. § 1589)

74. Defendants subjected Plaintiff to forced labor in violation of 18 U.S.C. § 1589.

75. Defendants knowingly threatened Plaintiff with physical restraint and/or serious harm in order to obtain Plaintiff's labor or services in violation of 18 U.S.C. § 1589(a)(1) and (2).

76. Defendants knowingly abused or threatened abuse of law or legal process in order to obtain Plaintiff's labor or services in violation of 18 U.S.C. § 1589(a)(3).

77. Defendants knowingly obtained Plaintiff's labor or services by means of a scheme, plan or pattern intended to cause Plaintiff to believe that if she did not perform such labor or services that she would suffer serious harm and/or physical restraint in violation of 18 U.S.C. § 1589(a)(4).

## B. Trafficking with respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. § 1590)

78. Defendants knowingly recruited, transported, harbored, provided and/or obtained Plaintiff for labor or services in violation of 18 U.S.C. §§ 1589 and 1592, and therefore violated 18 U.S.C. § 1590.

## C. Unlawful Conduct with respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. § 1592)

79. Defendants knowingly concealed, removed, confiscated, and/or possessed Plaintiff's passports and other immigration-related documents in the course of a violation of and/or with the intent to violate 18 U.S.C. §§ 1589 and 1590 and therefore violated 18 U.S.C. § 1592.

80. Defendants knowingly concealed, removed, confiscated, and/or possessed Plaintiff's passport and other immigration-related documents to prevent or restrict or to attempt to prevent or restrict, without lawful authority, Plaintiff's liberty to move or to travel, in order to maintain Plaintiff's labor or services. Plaintiff is a victim of a severe form of trafficking as defined in the Trafficking Victims Protection Act of 2003, section 103. Therefore, Defendants' acts violated 18 U.S.C. § 1592.

81. As a proximate result of the conduct of Defendants, Plaintiff has suffered injuries to her person and property, and other damages.

82. Plaintiff is entitled to recover compensatory and punitive damages in an amount to be proven at trial, including attorneys' fees.

### SECOND CLAIM FOR RELIEF

### Federal Labor Standards Act (FLSA) Minimum Wage Violation

### (29 U.S.C. § 201, _et seq._)

83. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

84. Because Plaintiff was employed as a domestic worker in a household at times relevant to this action, Plaintiff was engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 202(a).

85. Section 6(a) of the FLSA, 29 U.S.C. § 206(a), provides that any employee engaged in commerce shall be paid wages at a specific rate during the period of employment.

86. In all periods of Plaintiff's employment, Defendants knowingly paid Plaintiff an hourly rate far less than the federal minimum wage, in violation of 29 U.S.C. §§ 206 and 216.

87. Defendants' willful and intentional failure to pay Plaintiff the minimum wage violates 29 U.S.C. § 201, *et seq.* and U.S. Department of Labor regulations.

88. Defendants did not act in good faith when they failed to comply with federal minimum wage law.

89. Plaintiff is entitled to an award of damages for unpaid minimum wages in amounts equal to the proper federal minimum wage she should have been paid, liquidated damages, attorneys' fees, and costs.

### THIRD CLAIM FOR RELIEF

#### New York State Minimum Wage Violation

#### (N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.*)

90. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

91. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

92. At all times relevant to this action, Defendants were employers within the meaning of the New York Labor Law.

93. In all periods of Plaintiff's employment, Defendants failed to pay Plaintiff the proper minimum wage, as required by New York state law. N.Y. Lab. L. § 650 *et seq.*

94. Defendants' failure to pay Plaintiff the minimum wage was willful and/or not in good faith.

95. Plaintiff is entitled to an award of damages for unpaid minimum wages in an amount equal to the proper state minimum wage she should have been paid, liquidated damages, attorneys' fees, and costs.

### FOURTH CLAIM FOR RELIEF

### New York State Overtime Violation

(N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.*, 12 N.Y.C.R.R. § 142-2.2)

96. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

97. Defendants failed to pay Plaintiff overtime premiums for her work in excess of forty-four (44) hours per week, as required for a residential employee in violation of New York Labor Law §§ 190 *et seq.* and 650 *et seq.* and New York Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.2.

98. Defendants' failure to pay Plaintiff overtime pay was willful and/or not in good faith.

99. Plaintiff is entitled to an award of damages for overtime pay for work over forty-four (44) hours per week in an amount equal to the proper overtime premiums she should have been paid, liquidated damages, attorneys' fees, and costs.

### FIFTH CLAIM FOR RELIEF

### New York State Spread Of Hours Violation

(N.Y. Lab. L. §§ 190 *et seq.*, 650 *et seq.*, and 12 N.Y.C.R.R. § 142-2.4)

100. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

101. Defendants failed to pay Plaintiff an extra hour's pay for every day that she worked in which the interval between her start and end time exceeded ten hours, in violation of N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.* and New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.4.

102. Defendants' failure to pay Plaintiff spread of hours pay was willful and/or not in good faith.

103. Plaintiff is entitled to an award of an extra hour's pay for every day that Plaintiff worked in excess of ten hours, liquidated damages, attorneys' fees, and costs.

### SIXTH CLAIM FOR RELIEF

### New York State Unpaid Wages

#### (N.Y. Lab. L. §§ 190 *et seq.*)

104. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

105. The New York Labor Law requires employers to pay manual laborers each week, and to pay promised wages for every hour worked. N.Y. Lab. L. §§ 190, 191, *et seq.*

106. Defendants failed to pay Plaintiff the promised wage of $10.00 per hour and the corresponding overtime rate for hours over forty (40) per week, at $15.00 per hour.

107. Defendants' failure to pay Plaintiff the promised wages was willful and/or not in good faith.

108. Plaintiff is entitled to her promised wages, liquidated damages, attorneys' fees and costs.

## SEVENTH CLAIM FOR RELIEF

### Breach of Contract

109. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

110. Plaintiff and Mr. Dayal entered into an oral agreement, whereby Plaintiff agreed to work for Defendants, and Defendants agreed to pay Plaintiff $10 per hour for a 40-hour workweek, and overtime pay if work was performed beyond forty hours a week, among other promises.

111. The document signed by the Parties reflected the hours of work and payrate that the Parties had agreed to.

112. Mr. Dayal breached the terms of the Parties' oral contract.

113. Plaintiff is entitled to recover damages in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

### Unjust Enrichment (In the Alternative)

114. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

115. Plaintiff rendered services as cook, housekeeper, on-call servant, caterer, *inter alia*, in good faith and with the expectation that she would be fairly compensated for such services.

116. Defendants accepted those services and in turn failed to compensate Plaintiff for the reasonable and/or fair market value of her services.

117. Defendants have been unjustly enriched at Plaintiff's expense.

118. Defendants consciously or recklessly disregarded Plaintiff's rights.

119. Equity and good conscience require restitution to Plaintiff for the reasonable value of these services.

120. Plaintiff is entitled to recover damages in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

### Quantum Meruit (In the Alternative)

121. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

122. Plaintiff rendered services as cook, housekeeper, on-call servant, caterer, *inter alia*, in good faith and with the expectation that she would be fairly compensated for such services.

123. Defendants accepted those services and in turn failed to compensate Plaintiff for the reasonable and/or fair market value of her services.

124. Defendants have benefited from these services at Plaintiff's expense.

125. Defendants consciously or recklessly disregarded the Plaintiff's rights.

126. Plaintiff is entitled to recover damages in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF

### Conversion

127. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

128. Defendants wrongfully took and assumed ownership over Plaintiff's passport and immigration-related documents without her permission and to the exclusion of Plaintiff's ownership rights in the property.

129. As a result, Plaintiff is entitled to return of the property and to compensatory and punitive damages in an amount to be proven at trial.

## ELEVENTH CLAIM FOR RELIEF

### Trespass to Chattel (In the Alternative)

130. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth here.

131. At all times mentioned in the Complaint, Plaintiff had legal title to her passport and other immigration-related documents.

132. Defendants intentionally interfered with Plaintiff's use or possession of her passport and other immigration-related documents.

133. Defendants' trespass and interference proximately caused damage to Plaintiff, including but not limited to damage to Plaintiff's use and enjoyment of her passport and immigration-related documents.

134. Plaintiff is entitled to the return of the property and all damages sustained as a result of such trespass, in an amount to be determined at trial.

## TWELFTH CLAIM FOR RELIEF

### Retaliation Under the Fair Labor Standards Act

### (29 U.S.C. § 215)

135. By filing the Complaint in this action, Plaintiff filed a complaint and instituted a proceeding against Defendants within the meaning and scope of 29 U.S.C. § 215 entitling her to such legal and equitable relief as may be appropriate to effectuate the purposes of section 215. 29 U.S.C. § 216.

136. Defendants have retaliated against Plaintiff for filing the Complaint in this action by taking various actions designed to intimidate her from proceeding with this litigation and to deter any witnesses that may have been prepared to support her, including but not limited to releasing

her photograph, calling for her deportation and contacting the relevant authorities to effectuate this, publicizing the request for her deportation, and holding a press conference referring both to her lawsuit and the request for her deportation, in violation of 29 U.S.C. § 215.

137. Plaintiff is entitled to injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs incurred in seeking this relief.

## THIRTEENTH CLAIM FOR RELIEF

### Retaliation Under the New York Labor Law

(N.Y. Lab. L. § 215)

138. By filing the Complaint in this action, Plaintiff filed a complaint and instituted a proceeding against Defendants within the meaning and scope of N.Y. Lab. L. § 215, entitling her to such legal and equitable relief as may be appropriate to effectuate the purposes of section 215. N.Y. Lab. L. § 215.

139. Defendants have retaliated against Plaintiff for filing the Complaint in this action by taking various actions designed to intimidate her from proceeding with this litigation and to deter any witnesses that may have been prepared to support her, including but not limited to releasing her photograph, calling for her deportation and contacting the relevant authorities to effectuate this, publicizing the request for her deportation, and holding a press conference referring both to her lawsuit and the request for her deportation, in violation of N.Y. Lab. L. § 215.

140. Plaintiff is entitled to injunctive relief, compensatory damages, liquidated damages, punitive damages, reasonable attorneys' fees and costs incurred in seeking this relief.

## PRAYER FOR RELIEF

WHEREFORE, based on the allegations set forth above and/or additional facts that will be revealed through discovery Plaintiff respectfully requests that a judgment be granted as follows:

1.   Declaring that Defendants violated the Fair Labor Standards Act, the New York Labor Law, and the William Wilberforce Trafficking Victims Protection Reauthorization Act;

2.   Awarding Plaintiff unpaid minimum wages, plus liquidated damages, interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 201 *et seq.*;

3.   Awarding Plaintiff unpaid wages, including promised wages, minimum wages, overtime pay, and spread of hours pay, plus liquidated damages, interest, attorneys' fees and costs, pursuant to New York Labor Law § 190, *et seq.*;

4.   Awarding Plaintiff punitive and compensatory damages for pain and suffering, the reasonable and/or fair market value of services provided to Defendants, attorneys' fees and costs, and such other relief as the Court may deem just and proper pursuant to the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. § 1595;

5.   Awarding Plaintiff legal and equitable relief for Defendants' unlawful retaliation, including but not limited to compensatory damages, liquidated damages, punitive damages, attorneys' fees and costs and an injunction prohibiting further retaliation.

6.   Awarding Plaintiff pre-judgment interest and post-judgment interest as allowed by law;

7.   Directing Defendants to return Plaintiff's passport and all other documents belonging to her; and awarding Plaintiff compensatory and punitive damages due to the conversion and/or trespass of her passport and other documents;

8.   Declaring the oral contract between the parties a valid contract and awarding Plaintiff the value of the terms of the contract; or in the alternative, awarding Plaintiff the reasonable and/or fair market value of services provided to Defendants in good faith pursuant to Plaintiff's claims of unjust enrichment or quantum meruit;

9.    Awarding Plaintiff such other legal and equitable relief as the Court may deem just and

proper.


Dated: New York, New York
       August 12, 2011


                              Respectfully submitted,


By:                           THE LEGAL AID SOCIETY
                              Steven R. Banks, Attorney in Chief
                              Adriene L. Holder, Attorney in Charge,
                              Civil Practice
                              Karen Cacace, Supervising Attorney
                              Hollis V. Pfitsch, of counsel
                              Employment Law Unit
                              199 Water Street, 3rd Floor
                              New York, New York 10038
                              (212) 577-3465 (phone)
                              (KCacace@legal-aid.org)
                              (HVPfitsch@legal-aid.org)


                              OUTTEN & GOLDEN LLP
                              Dana Sussman
                              3 Park Avenue, 29th Floor
                              New York, New York 10016
                              (212) 245-1000 (phone)
                              (dsussman@outtengolden.com)