| | |
|---|---|
| **OUTTEN & GOLDEN LLP** | **THE LEGAL AID SOCIETY** |
| Adam Klein | Steven R. Banks, Attorney-in-Chief |
| Dana Sussman | Adriene L. Holder, Attorney-in-Charge, Civil Practice |
| 3 Park Avenue, 29th Floor | Karen Cacace, Supervising Attorney |
| New York, New York 10016 | Hollis V. Pfitsch, of counsel |
| Telephone:  (212) 245-1000 | Employment Law Unit |
| | 199 Water Street, 3rd Floor |
| | New York, New York 10038 |
| | Telephone: (212) 577-3465 |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANTOSH BHARDWAJ,<br><br>Plaintiff,<br><br>-against-<br><br>PRABHU DAYAL, CHANDINI DAYAL, and AKANSHA DAYAL,<br><br>Defendants. | No. 11 Civ. 4170 (AKH) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY.................................................................................................. 2

ARGUMENT ........................................................................................................................ 2

    I.    Defendants Are Not Entitled To Diplomatic Immunity Because Defendant Prabhu Dayal Is Not A Diplomat ................................................................................................ 3

        A.    The Facts Contained In Defendants' Supporting Affidavit Fail To Establish That Defendant Prabhu Dayal Is A Diplomat ............................................................... 4

        B.    Defendant Prabhu Dayal Cannot Obtain Diplomatic Status Without The United States Government's Recognition, And No Such Recognition Exists ...................... 5

        C.    Defendants Fail To Cite A Single Relevant Case ............................................... 7

    II.    Consular Immunity Does Not Apply Because Defendants' Employment of Plaintiff Bhardwaj Falls Within Exceptions to Consular Immunity .................................... 8

        A.    Consular Immunity Is Limited ............................................................................ 8

        B.    Defendant Prabhu Dayal Is Not Immune Because The Employment Of A Personal Domestic Worker Is Not A "Consular Function." ............................................. 9

        C.    Defendant Prabhu Dayal Is Not Immune Because He Was Not Acting As An "Agent" Of India When He Contracted For Plaintiff Bhardwaj's Employment ............. 10

        D.    Defendants Chandini Dayal And Akansha Dayal Are Not Entitled To Any Consular Immunity ............................................................................................ 11

CONCLUSION .................................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Brzak v. United Nations*,
    597 F.3d 107 (2d Cir. 2010) ............................................................................................... 7

*Cornwell v. Credit Suisse Group*,
    666 F. Supp. 2d 381 (S.D.N.Y. 2009) ............................................................................ 2, 3

*Filus v. Lot Polish Airlines*,
    907 F.2d 1328 (2d Cir. 1990) ............................................................................................ 3

*Ford v. Clement*,
    834 F. Supp. 72 (S.D.N.Y. 1993) ................................................................................... 8, 9

*Foremost–McKesson, Inc. v. Islamic Republic of Iran*,
    905 F.2d 438 (D.C. Cir. 1990) .......................................................................................... 3

*Gonzalez Paredes v. Vila*,
    479 F. Supp. 2d 187 (D.D.C. 2007) ............................................................................... 5, 7

*Heaney v. Government of Spain*,
    445 F.2d 501 (2d Cir. 1971) ............................................................................................ 11

*Joseph v. Office of the Consulate General of Nigeria*,
    830 F.2d 1018 (9th Cir. 1987) ........................................................................................ 11

*Koeppel & Koeppel v. Federal Republic of Nigeria*,
    704 F. Supp. 521 (S.D.N.Y. 1989) ................................................................................ 7, 8

*Mateo v. Perez*,
    No. 98 Civ. 7426, 1999 WL 216651 (S.D.N.Y. Apr. 13, 1999) ................................ 2, 7, 8

*Mazengo v. Mzengi*,
    542 F. Supp. 2d 96 (D.D.C. 2008) .................................................................................... 3

*Miles Management Corporation v. Republic of South Africa*,
    No. 94 Civ. 1318, 1994 WL 714584 (N.D. Ill. Dec. 19, 1994) ...................................... 11

*Montuya v. Chedid*,
    No. 10 Civ. 695, 2011 WL 1557921 (D.D.C. Apr. 26, 2011) .................................. 5, 6, 7

*Park v. Shin*,
    313 F.3d 1138 (9th Cir. 2002) ................................................................................ 7, 9, 10

*Republic of Philippines by Central Bank of Philippines v. Marcos*,
    665 F. Supp. 793 (N.D. Cal. 1987) ................................................................................... 5

*Sabbithi v. Al Saleh*,
   605 F. Supp. 2d 122 (D.D.C. 2009) ............................................................................. 5, 7, 8

*Swarna v. Al-Awadi*,
   622 F.3d 123 (2d Cir. 2010) ............................................................................................. 7

*Tabion v. Mufti*,
   73 F.3d 535 (4th Cir. 1996) ............................................................................................. 7

*Tachiona v. United States*,
   386 F.3d 205 (2d Cir. 2004) ............................................................................................ 7

*United States v. Noriega*,
   746 F. Supp. 1506, 1524 (S.D. Fla. 1990) ....................................................................... 4

*United States v. Kostadinov*,
   734 F.2d 905 (2d Cir. 1984) .......................................................................................... 5, 6

**OTHER AUTHORITIES**

James E. Hickey, Jr., Annette Fisch, *The Case to Preserve Criminal Jurisdiction Immunity Accorded Foreign Diplomatic and Consular Personnel in the United States*,
   41 HASTINGS L. J. 351 (1990) ....................................................................................... 12

Human Rights Watch, *Hidden in the Home: Abuse of Domestic Workers with Special Visas in the United States*,
   Vol. 13, No. 2 (G), June 2001 ........................................................................................ 12

James M. Parkhill, *Diplomacy In The Modern World: A Reconsideration of the Bases for Diplomatic Immunity in the Era of High-Tech Communications*,
   21 HASTINGS INT'L & COMP. L. REV. 565 (1997) ........................................................ 12

Restatement (Third) of Foreign Relations Law of the United States (1987) .......................... 4, 6

Lori J. Shapiro, *Foreign Relations Law: Modern Developments in Diplomatic Immunity*,
   1989 Ann. Surv. Am. L. 281 (1990) ................................................................................ 8

Vienna Convention on Consular Relations,
   Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261 ....................................................... passim

**PRELIMINARY STATEMENT**

Plaintiff Santosh Bhardwaj brings claims against her former employers Prabhu Dayal, the current Consul General of India, his wife Chandini Dayal, and his daughter Akansha Dayal, for forced labor and trafficking under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, and for unpaid wages under the Fair Labor Standards Act and the New York Labor Law.  Mr. Dayal obtained an A-3 visa for Ms. Bhardwaj, which is available for personal assistants to consular officers, and convinced her to work in the United States under the false pretense that she would be paid $10 per hour, work forty hours per week, and earn overtime pay for any additional hours worked.  However, when she arrived, Defendants confiscated Ms. Bhardwaj's passport and required her to work approximately 14 to 16 hours per day, cooking, cleaning, serving food, and doing laundry.  Defendants did not pay Ms. Bhardwaj the hourly rate they had promised her or even the minimum wage required by state and federal law.  Instead, Defendants deposited the equivalent of approximately $300 per month into an account in India, which equals an estimated hourly rate of $1 or less per hour.

Defendants now seek dismissal of Ms. Bhardwaj's claims on the basis that Mr. Dayal is entitled to diplomatic immunity.  Defendants' argument is meritless.  In order to have diplomatic immunity in the United States, one must be a diplomat recognized by the United States.  Mr. Dayal is not.  Mr. Dayal is the Consul General of India – a consular officer – and as such is entitled to limited consular immunity.  Inexplicably, Defendants claim that despite his official title as Consul General, Mr. Dayal is a "diplomat," entitled to broader diplomatic immunity.  This is not true.  The titles of consular officer and diplomat confer different rights and immunities and are regulated by different international Conventions.  Indeed, Defendants fail to

1

cite a single case – and Plaintiff is not aware of any – in which a court conferred diplomatic immunity on a consular officer.

Defendants secondarily argue that they are immune to suit pursuant to the doctrine of consular immunity. While it is true that the more limited consular immunity applies to Mr. Dayal, it does not shield him, nor his family, from liability. Defendants' employment and supervision of Ms. Bhardwaj as their personal domestic servant was merely incidental to Mr. Dayal's position as Consul General and, therefore, does not come within the scope of his consular immunity.

Accordingly, the Court should reject Defendants' motion to dismiss in its entirety.

## PROCEDURAL HISTORY

Plaintiff Bhardwaj filed the Complaint on June 20, 2011. On August 8, 2011, the Court so ordered the parties' stipulation as to the following dates: the filing of an Amended Complaint by August 12, 2011, and the filing of responsive papers by September 9, 2011. Defendants filed their motion to dismiss on September 8, 2011. The parties have not yet initiated discovery while Defendants' motion is pending.

## ARGUMENT

"The inquiry on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) concerns whether the district court has the statutory or constitutional power to adjudicate the case." *Cornwell v. Credit Suisse Grp.*, 666 F. Supp. 2d 381, 386 (S.D.N.Y. 2009). In considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction. *See Mateo v. Perez*, No. 98 Civ. 7426, 1999 WL 216651, at *3 (S.D.N.Y. Apr. 13, 1999) (citing *Atl. Mut. Ins. Co. v. Balfour MacLaine Intel Ltd.,* 968 F.2d

196, 198 (2d Cir. 1992); James Wm. Moore, *Moore's Federal Practice* § 12.30[4], at 12–38 (3d ed. 1999)). Where the presence or absence of subject matter jurisdiction is dependent upon a defendant's immunity from suit, the parties should be given "a fair opportunity" to engage in jurisdictional discovery and submit to the court the evidence needed to resolve that issue before the court rules on a motion to dismiss. *See Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990); *Filus v. Lot Polish Airlines,* 907 F.2d 1328, 1332 (2d Cir. 1990) (remanding to district court for resolution of factual issues). In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court may consider evidence outside the pleadings. *See Cornwell*, 666 F. Supp. 2d at 386 (citing *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)).

## I.     Defendants Are Not Entitled To Diplomatic Immunity Because Defendant Prabhu Dayal Is Not A Diplomat.

"A foreign official cannot simply assert diplomatic immunity in order to evade civil jurisdiction . . . ." *Mazengo v. Mzengi*, 542 F. Supp. 2d 96, 99-100 (D.D.C. 2008). Yet, this is exactly what Defendants seek to do here. Despite Defendants' attempt at obfuscation by reciting a laundry list of facts of no legal significance, Mr. Dayal is not a diplomat, and is not entitled to diplomatic immunity. Mr. Dayal's title is Consul General of India at the Consulate General of India. This means that he is a consular officer, which is a separate and distinct title from "diplomat" and which confers a much more limited form of immunity. As a consular officer, Mr. Dayal is accorded only consular immunity, pursuant to the Vienna Convention on Consular Relations ("VCCR"), and not diplomatic immunity. *See* VCCR, art. 43, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261. And consular immunity does not immunize Mr. Dayal, or his family, from liability on Plaintiff Bhardwaj's claims. *See infra* Section III.

### A. The Facts Contained In Defendants' Supporting Affidavit Fail To Establish That Defendant Prabhu Dayal Is A Diplomat.

Nothing in Defendants' memorandum supports their claim of diplomatic immunity. The affidavit of Secretary Ashok Tomar of the Indian Ministry of External Affairs, on which Defendants heavily rely in support of their motion to dismiss, fails to establish Defendants' entitlement to diplomatic immunity because it is completely devoid of facts probative of Mr. Dayal's alleged title of diplomat. Secretary Tomar makes the vague assertion that Mr. Dayal is "part of the overall functioning of the Embassy of India in Washington, D.C." and states that the Indian government customarily "post[s] a senior Ambassador level officer at [sic] New York," and that previous "Indian Consuls General in New York have been diplomats who have served as Ambassadors to other countries before taking up their assignment in New York." Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs.' Memo."), Ex. A (Affidavit of Secretary Ashok Tomar) at 1-3. Yet, none of these claims change the fact that Mr. Dayal is currently a consular officer and *not a diplomat*.

Further, that Mr. Dayal and his wife hold diplomatic passports, as Secretary Tomak avows, *id.* at 3, does "not prove that the holder [of such a passport] enjoys diplomatic status or is entitled to diplomatic privileges and immunities in the receiving state." Restatement (Third) of Foreign Relations Law of the United States § 464, Reporters' Note 1 (1987) (citing *United States v. Arizti*, 229 F. Supp. 53 (S.D.N.Y. 1964); *United States v. Coplon*, 88 F. Supp. 915 (S.D.N.Y. 1950)); *see also United States v. Noriega*, 746 F. Supp. 1506, 1524 (S.D. Fla. 1990) *aff'd*, 117 F.3d 1206 (11th Cir. 1997) ("Mere issuance of the passport does not constitute the necessary notification and request for accreditation and, assuming *arguendo* it did, it has no effect in the absence of acceptance as such by the United States.").

4

### B. Defendant Prabhu Dayal Cannot Obtain Diplomatic Status Without The United States Government's Recognition, And No Such Recognition Exists.

Even if Secretary Tomar's affidavit included facts to support Defendant Prabhu Dayal's alleged diplomatic status, his affidavit alone is insufficient to confer such status. An individual seeking diplomatic status does not become a diplomatic agent unless the receiving state agrees. *See* Restatement (Third) of Foreign Relations Law of the United States § 464 (1987). In the United States, a person's diplomatic status is established when it is recognized by the Department of State. *See United States v. Kostadinov*, 734 F.2d 905, 911-13 (2d Cir. 1984) (trade representative not accepted as diplomat has no diplomatic immunity); *Rep. of Phil. by Cent. Bank of Phil. v. Marcos*, 665 F. Supp. 793, 799 (N.D. Cal. 1987) ("[W]hether a diplomatic agent is entitled to diplomatic immunity is a matter for the State Department to decide.").

Indeed, in every case cited by Defendants in which diplomatic immunity was granted, a letter from the U.S. State Department confirming the diplomatic status of each defendant was submitted to the court. The courts found the letters probative, if not persuasive, of the defendants' status. *See Montuya v. Chedid*, No. 10 Civ. 695, 2011 WL 1557921, at *2 (D.D.C. Apr. 26, 2011); *Sabbithi v. Al Saleh*, 605 F. Supp. 2d 122, 127 (D.D.C. 2009); *Gonzalez Paredes v. Vila*, 479 F. Supp. 2d 187, 192 (D.D.C. 2007). The U.S. State Department did not submit such a letter here, and there is no reason to believe that the United States conferred diplomatic status on Mr. Dayal. In fact, as the Second Circuit recognizes, the history of the Vienna Convention of Diplomatic Relations ("VCDR") reveals that delegates to the Vienna Conference were averse to conferring diplomatic status on purely consular officials. *Kostadinov*, 734 F.2d at 910 (citing *Official Records of the United Nations Conference on Diplomatic Intercourse and Immunities, Vienna,* 2 March-14 April 1961 (Geneva 1962) 82). As a result, the VCCR was developed as a wholly distinct regulatory system for consular relations. *Id.*

5

Moreover, Defendant Prabhu Dayal is not included on the U.S. State Department's Diplomatic List,[1] which, according to the State Department's website, "contains a complete list of the accredited diplomatic officers of foreign embassies within the United States."[2] Those included on the list, of which Defendant Prabhu Dayal is *not* one, enjoy "full immunity under provisions of the Vienna Convention on Diplomatic Relations."[3] Rather, Mr. Dayal is listed in the U.S. State Department's Foreign Consular Book,[4] which lists "recognized consular officers."[5] Those included in the Foreign Consular Book "are entitled to the *limited* immunities described in the Vienna Convention on Consular Relations."[6] (emphasis added). Courts rely on these lists as "presumptive evidence" of diplomatic or consular status. *See* Restatement (Third) of Foreign Relations Law of the United States § 464, Reporters' Note 1 (1987); *see also Kostadinov*, 734 F.2d at 912 (noting that defendant's name never appeared on the State Department's list of diplomats as probative of non-diplomatic status); *cf. Montuya*, 2011 WL 1557921, at *2 (noting defendant's presence on the State Department's Diplomatic List as supportive of diplomatic status). There is simply no reason to believe, despite Defendants'

---

[1] Mr. Dayal is not included on the list of diplomatic officers for India. *See* Declaration of Dana Sussman in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss ("Sussman Decl."), Ex. A (excerpt of U.S. Department of State Diplomatic List, Spring 2011), at 43-44.

[2] Sussman Decl., Ex. B. (U.S. Department of State webpage titled "Foreign Embassy Information and Publications").

[3] Sussman Decl., Ex. C. (U.S. Department of State webpage titled "Diplomatic List").

[4] Sussman Decl., Ex. D (excerpt of U.S. Department of State publication titled "Foreign Consular Offices in the United States"), at 59.

[5] *Id.* at i.

[6] *Id.*

misrepresentations to the contrary, that Defendant Prabhu Dayal is a diplomat.[7] Because Mr. Dayal is not a diplomat, no diplomatic immunity attaches to any of the Defendants.

### C. Defendants Fail To Cite A Single Relevant Case.

Defendants do not cite a single case in their brief that involved a Consul General or any other consular officer. Instead, they rely on inapplicable and irrelevant cases dealing with diplomatic agents, including United Nations officials, ambassadors, and foreign dignitaries.[8] Defendants' omission is telling: Plaintiff is not aware of a single court that has conferred diplomatic immunity – instead of consular immunity – on a consular officer. *Cf. Park v. Shin*, 313 F.3d 1138 (9th Cir. 2002) (applying consular immunity to Consul General); *Mateo*, 1999 WL 216651, at *4 (citing *Gerritsen v. Consulado General de Mex.,* 989 F.2d 340, 345 (9th Cir.

---

[7] Defendants also assert diplomatic immunity – which, as discussed above, is not applicable to them – in challenging service of process. *See* Defs.' Memo. at 7. However, "a consular officer is not immune from all legal process, [he] must 'respond to any process and plead and prove immunity on the ground that the act or omission underlying the process was in the performance of his official functions.'" *Koeppel & Koeppel, v. Fed. Republic of Nig.*, 704 F. Supp. 521, 522 (S.D.N.Y. 1989) (citing Restatement (Third) of Foreign Relations Law of the United States § 465, comment A (1987)).

[8] *See Swarna v. Al-Awadi*, 622 F.3d 123 (2d Cir. 2010) (former Third Secretary to the Permanent Mission of the State of Kuwait to the United Nations not entitled to residual diplomatic immunity under VCDR); *Brzak v. United Nations*, 597 F.3d 107 (2d Cir. 2010) (United Nations and present and former United Nations officials entitled to immunity from sex discrimination claims under Convention on Privileges and Immunities of the United Nations); *Tachiona v. United States*, 386 F.3d 205 (2d Cir. 2004) (temporary representatives to United Nations conference, which included ruling party of Zimbabwe and Zimbabwean President and Foreign Minister, entitled to diplomatic immunity under VCDR); *Tabion v. Mufti*, 73 F.3d 535 (4th Cir. 1996) (diplomatic immunity for Jordanian diplomat not challenged, issue presented was whether exception to such immunity applied); *Montuya*, 2011 WL 1557921, at *2 (ambassador of Lebanon, supported by letter from U.S. State Department confirming status as diplomatic agent, entitled to diplomatic immunity); *Sabbithi*, 605 F. Supp. 2d at 127 (attaché to Kuwaiti Embassy, supported by letter from U.S. State Department confirming status as diplomatic agent, entitled to diplomatic immunity); *Gonzalez Paredes*, 479 F. Supp. 2d at 192 (Argentine diplomat, supported by letters from U.S. State Department and Argentine Embassy, holds diplomatic immunity).

1993)) (same); *Ford v. Clement*, 834 F. Supp. 72 (S.D.N.Y. 1993), *aff'd*, 29 F.3d 621 (2d Cir. 1994) (same); *Koeppel & Koeppel*, 704 F. Supp. 521 (same).

II.     **Consular Immunity Does Not Apply Because Defendants' Employment Of Plaintiff Bhardwaj Falls Within Exceptions To Consular Immunity.**

As a consular officer, Defendant Prabhu Dayal is entitled to limited consular immunity. However, consular immunity does not shield Defendants from Ms. Bhardwaj's claims because Defendants are only entitled to consular immunity with respect to acts performed in the exercise of consular functions or with respect to contracts entered into by consular officers as "agents of the sending state." The employment and supervision of Ms. Bhardwaj as the Defendants' personal domestic servant does not fall into either category.

    A.     **Consular Immunity Is Limited.**

"[C]onsuls enjoy less immunity than diplomats." Lori J. Shapiro, *Foreign Relations Law: Modern Developments in Diplomatic Immunity*, 1989 Ann. Surv. Am. L. 281, 292 (1990) (citing *Koeppel & Koeppel*, 704 F. Supp. at 522); *see also Sabbithi*, 605 F. Supp. 2d at 123 n.3. Specifically, Article 43 of the VCCR provides that "[c]onsular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving state" but only with respect to "acts performed in the exercise of consular functions." Art. 43, 21 U.S.T. at 104. In addition, consular immunity does not apply in a civil action "arising out of a contract concluded by a consular officer or a consular employee in which he did not contract expressly or impliedly as an agent of the sending state." *Id.*

Article 5 of the VCCR sets forth twelve specific consular functions. *Id.* at art. 5. These include such activities as "affording protection to the interests of the sending state or its nationals [and] furthering commercial, economic, cultural and scientific relations between the sending

8

state and the receiving state by lawful means," among others. *Ford*, 834 F. Supp. at 75 (citing Restatement (Third) of Foreign Relations Law of the United States § 465, Reporters' Note 4 (1987) (citing VCCR, art. 5)). In addition, Article 5 contains a "catch-all" provision defining consular functions to include "performing any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving State or to which no objection is taken by the receiving State or which are referred to in the international agreements in force between the sending State and the receiving State." *Id.* (citing art. 5(m)).

### B. Defendant Prabhu Dayal Is Not Immune Because The Employment Of A Personal Domestic Worker Is Not A "Consular Function."

Defendants' employment of Plaintiff Bhardwaj, their *personal* domestic servant, was not a "consular function" under Article 5 of the VCCR. In the only other case to address this specific issue, the Ninth Circuit held that the employment of a personal domestic servant was merely "incidental" to the Consul General's official duties and therefore did not constitute a consular function. *Park*, 313 F.3d at 1143.

The facts in *Park* are analogous to those present here. In *Park*, the defendant, the Deputy Consul General of the Republic of Korea, obtained an A-3 visa for the plaintiff that permitted her to enter the United States to work as a domestic servant for the Deputy Consul General and his family. *Id.* at 1140. The plaintiff's work included cooking, cleaning, performing other household duties, and taking care of the defendants' children. *Id.* at 1141. The plaintiff asserted that she worked fifteen hours a day on weekdays and thirteen hours a day on weekends. *Id.* at 1143.

The Ninth Circuit held that the plaintiff was hired as the Deputy Counsel General's "*personal* domestic servant" and that "[a]ny labor she performed on behalf of the Consulate was

9

incidental to her employment as a personal servant." *Park*, 313 F.3d at 1142. The court relied primarily on two key facts, both of which are present here. First, the defendant obtained an A-3 visa for the plaintiff, which, the court recognized, "are issued only for *personal* employees of consular officers." *Id.* at 1142-43 (emphasis in original) (citing 8 U.S.C. § 1101(a)(15)(A)(iii); 8 C.F.R. § 214.(a)(2)). Second, the court recognized that, while the Korean government paid the defendant for business-related expenses, it did not pay for the plaintiff's services.

Here, just as in *Park*, Mr. Dayal obtained an A-3 visa for Ms. Bhardwaj, she performed personal services for the Defendants, and Mr. Dayal told Ms. Bhardwaj that *he* was depositing money into her Indian bank account as payment for her services. Accordingly, Mr. Dayal's consular immunity does not protect him from Ms. Bhardwaj's claims.

> C.  **Defendant Prabhu Dayal Is Not Immune Because He Was Not Acting As An "Agent" Of India When He Contracted For Plaintiff Bhardwaj's Employment.**

Defendants' final argument in support of their claim of immunity also fails. Consular immunity does not protect a consular officer from liability in a civil action "arising out of a contract . . . in which [the consular officer] did not contract expressly or impliedly as an agent of the sending state." VCCR, art. 43, 21 U.S.T. at 104. For the same reasons as those set forth above – Mr. Dayal entered into an employment contract with Ms. Bhardwaj for her personal domestic services for his family; she was promised payment from Mr. Dayal personally, not the government of India; and her employment was "incidental" to Mr. Dayal's status as a consular officer – Mr. Dayal was not acting as an "agent" of India when he entered into the employment contract. Accordingly, the contract exception to consular immunity also applies.[9] *See Joseph v.*

---

[9] Defendants' interpretation of the contract exception is confused. While the exception clearly applies to contracts "concluded *by a consular officer* or a consular employee *in which he did not contract expressly or impliedly as an agent of the sending state*," (emphasis added) Defendants

10

*Office of the Consulate Gen. of Nig.*, 830 F.2d 1018, 1020 (9th Cir. 1987) (claims for breach of contract, conversion, trespass, and waste brought against a Nigerian Consul by his landlord were not covered by consular immunity because the dispute concerned only defendant's private residence and was not connected to defendant's official duties); *cf. Heaney v. Gov't of Spain*, 445 F.2d 501 (2d Cir. 1971) (finding contract exception inapplicable where consular representative contracted with United States citizen to generate adverse publicity against another foreign government); *Miles Mgmt. Corp. v. Republic of S. Afr.*, No. 94 Civ. 1318, 1994 WL 714584 (N.D. Ill. Dec. 19, 1994) (finding contract exception inapplicable where Consul General entered into agreements to rent three apartments and two parking spaces for the Republic of South Africa).[10]

### D. Defendants Chandini Dayal And Akansha Dayal Are Not Entitled To Any Consular Immunity.

Although Defendants claim that Chandini and Akansha Dayal are entitled to the same consular immunity as Prabhu Dayal, this is not true. Defendants Chandini and Akansha Dayal have no official consular capacity and, therefore, no consular immunity. "Family members of consular officers do not enjoy the same privileges and immunities with respect to the civil and criminal jurisdiction of the receiving state as do consular officers." *See* Sussman Decl., Ex. D (excerpt of U.S. Department of State publication titled "Foreign Consular Offices in the United States"), at i; *see also* James M. Parkhill, *Diplomacy In The Modern World: A Reconsideration*

---

attempt to argue that the contract exception does not apply because *Ms. Bhardwaj* is an agent of the sending state. Defs.' Memo. at 10-11. However, the exception turns on whether Mr. Dayal entered into a contract in his capacity as an agent of the sending state, i.e., in his role as a consular officer representing India. The issue of whether Ms. Bhardwaj is an agent of the sending state – which she is not – is irrelevant.

[10] In the event that the Court determines any factual questions exist as to whether Mr. Dayal was acting pursuant to his consular functions in employing and supervising Ms. Bhardwaj or whether Mr. Dayal contracted with Ms. Bhardwaj as an agent of the sending state, the Court should deny Defendants' motion to dismiss and allow discovery to proceed on the factual questions.

11

*of the Bases for Diplomatic Immunity in the Era of High-Tech Communications*, 21 HASTINGS INT'L & COMP. L. REV. 565, 575 (1997) (Article 43 "denies immunity to consuls' families and limits the activities under which immunity might obtain to a narrower range."); James E. Hickey, Jr., Annette Fisch, *The Case to Preserve Criminal Jurisdiction Immunity Accorded Foreign Diplomatic and Consular Personnel in the United States*, 41 HASTINGS L. J. 351, 372 (1990) ("The limited functional immunity and personal inviolability accorded to consular personnel, in contrast to diplomatic personnel, does not extend to family members."); Human Rights Watch, *Hidden in the Home: Abuse of Domestic Workers with Special Visas in the United States*, Vol. 13, No. 2 (G), June 2001 at n. 227, *available at* http://www.hrw.org/reports/2001/usadom/ ("Family members of international organization or consular officials enjoy no immunity, as they do not have any 'official capacity' with respect to such organizations or offices."). Accordingly, Defendants Chandini and Akansha Dayal's claim of consular immunity fails.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny the Defendants' motion to dismiss in its entirety.

Dated:      September 22, 2011
            New York, New York

                                        Respectfully submitted,

                                        **OUTTEN & GOLDEN LLP**
                                        By:

                                         /s/ Dana Sussman
                                        Dana Sussman

**OUTTEN & GOLDEN LLP**
Adam Klein
Dana Sussman
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**THE LEGAL AID SOCIETY**
Steven R. Banks, Attorney-in-Chief
Adriene L. Holder, Attorney-in-Charge, Civil Practice
Karen Cacace, Supervising Attorney
Hollis V. Pfitsch, of counsel
Employment Law Unit
199 Water Street, 3rd Floor
New York, New York 10038
Telephone: (212) 577-3465