UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SANTOSH BHARDWAJ,

                                Plaintiff,

          - *against* -

PRABHU DAYAL, CHANDINI DAYAL and AKANSHA
DAYAL,

                                Defendants.

---

PRABHU DAYAL,

                     Counterclaim-Plaintiff,

          - *against* -

SANTOSH BHARDWAJ,

                     Counterclaim-Defendant,

-and-

HOLLIS PFITSCH and
THE LEGAL AID SOCIETY,

            Additional Defendants on Counterclaims.

---

No. 11 Civ. 4170 (AKH)

## MEMORANDUM OF LAW OF HOLLIS PFITSCH AND THE LEGAL AID SOCIETY IN SUPPORT OF THEIR MOTION TO DISMISS AND FOR SUMMARY JUDGMENT DISMISSING COUNTERCLAIMS

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS .......................................................................................................3

    A.    The Parties ....................................................................................................3

    B.    The Underlying Lawsuit ...............................................................................3

    C.    The Press Responds to the Filing of the Complaint.................................3

    D.    The Amended Complaint...............................................................................5

    E.    The Defamation Counterclaims ....................................................................5

ARGUMENT...........................................................................................................................7

I.    Section 74 of the New York Civil Rights Law Requires Dismissal of the
Counterclaims .........................................................................................................7

    A.    The Absolute Protections of New York Civil Rights Law Section 74 .................7

    B.    The Statements Describe a Judicial Proceeding .......................................9

    C.    The Statements Were a "Fair and True" Report of a Judicial Proceeding............10

II.    Statements Made in the Complaint Itself Are Absolutely Privileged From
Counterclaims .......................................................................................................11

III.    Dayal Is a Public Official Whose Counterclaims Fail to Allege the Requisite
Actual Malice........................................................................................................12

CONCLUSION.....................................................................................................................14

## TABLE OF CONTENTS—AFFIDAVITS

**I.     Affidavit of Floyd Abrams**

    a.  Exhibit A:  Complaint, filed June 20, 2011.

    b.  Exhibit B: Second Amended Answer and First Amended Counterclaims of Defendant Prabhu Dayal, filed February 3, 2012.

    c.  Exhibit C: Scott Shifrel, Consul General of India Accused of keeping a mother of four as virtual slave in posh UES digs, (June 20, 2011) at http://articles.nydailynews.com/2011-06-20/local/29704427_1_lawsuit-virtual-slave-human-trafficking.

    d.  Exhibit D: Betwa Sharma, Indian-American community expresses support for Dayal, (June 27, 2011) at http://news.in.msn.com/international/article.aspx?cp-documentid=5237104.

    e.  Exhibit E: India Today, Indian consul general in New York accused of sexual harassment by former maid, (June 21, 2011) at http://indiatoday.intoday.in/story/forced-labour-suit-against-indian-consul-general-in-ny/1/142236.html.

    f.  Exhibit F: Nadeem Iftekhar, Indian diplomat faces lawsuit at the hands of Santosh Bhardwaj; his Indian domestic help, (June 21, 2011) at http://indiatoday.intoday.in/story/forced-labour-suit-against-indian-consul-general-in-ny/1/142236.html.

    g.  Exhibit G: Affidavit of Ashok Tomar, which was presented to the Court by Dayal in connection with a prior hearing in this lawsuit.

**II.    Affidavit of Hollis Pfitsch**

    a.  Exhibit H: Email from Hollis Pfitsch to Steve Banks, Karen Cacace, Adriene Holder, Particia Bath, and Judith Goldiner of the Legal Aid Society, sent at 12:36 P.M. on June 20, 2011.

    b.  Exhibit I: Email from Scott Shifrel to Karen Cacace and Hollis Pfitsch, sent at 2:55 P.M. on June 20, 2011.

    c.  Exhibit J: Letter by Ravi Batra, former attorney for Prabhu Dayal, to Homeland Security Secretary Janet Napolitano, Attorney General Eric Holder, and Secretary of State Hillary Clinton, sent June 24, 2011.

## III.    Affidavit of Patricia Bath

        a.  Exhibit K: Press Release sent by Patricia Bath on 20 June 2011 in response to
            requests from the press.

## TABLE OF AUTHORITIES

### FEDERAL CASES

Desai v. Hersch, 719 F. Supp. 670, 673 (N.D. Ill. 1989)....................................................13

Fuji Photo Film U.S.A., Inc. v. McNulty, 669 F. Supp. 2d 405 (S.D.N.Y. 2009)...........................8

Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974) ...........................................................12

New York Times v. Sullivan, 376 U.S. 254 (1964)..........................................................1, 2, 12, 13

Sharon v. Time, Inc., 599 F. Supp. 538 (S.D.N.Y. 1984)....................................................13

Southridge Capital Mgmt., LLC v. Lowry, No. 1 Civ. 4880 (RO), 2003 U.S. Dist.

LEXIS 153 (S.D.N.Y.) Jan. 7, 2003 .............................................................................8

St. Amant v. Thompson, 390 U.S. 727 (1968) .............................................................2, 12

The Savage is Loose Co. v. United Artists Theatre Circuit, Inc., 413 F. Supp. 555

(S.D.N.Y. 1976).........................................................................................................8, 9, 11

### STATE CASES

Andrews v. Gardner, 224 N.Y. 440 (1918)......................................................................11

Fishof v. Abady, 720 N.Y.S.2d 505 (1st Dep't 2001) ........................................................9

Glendora v. Gannett Suburban Newspapers, 608 N.Y.S.2d 239 (1st Dep't 1994)...........................8

Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co., 49

N.Y.2d 63 (1979) .........................................................................................................8

Lee v. Brooklyn Union Publ'g Co., 209 N.Y. 245 (1913).....................................................2

Mosesson v. Jacob D. Fuchsberg Law Firm, 683 N.Y.S.2d 88 (1st Dep't 1999)...........................11

Seltzer v. Fields, 244 N.Y.S.2d 792 (1st Dep't 1963) ........................................................8

Sexter & Warmflash, P.C. v. Magrabe, 828 N.Y.S.2d 315 (1st Dep't 2007)................................11

Youmans v. Smith, 153 N.Y. 214 (1918) ........................................................................................2

**STATE STATUTES**

N.Y. Civ. Rights Law § 74 (2012)...................................................................................................8

## PRELIMINARY STATEMENT

The Legal Aid Society ("LAS") and one of its staff attorneys, Hollis Pfitsch ("Pfitsch"), are counsel for Plaintiff Santosh Bhardwaj in this action.  They respectfully submit this memorandum of law on their own behalf because Defendant Prabhu Dayal ("Dayal") has now filed a third-party complaint against them arising out of their activities as counsel.  This memorandum is in support of their motion to dismiss the defamation third party claims asserted against them in the Second Amended Answer and First Amended Counterclaims of Dayal, filed February 3, 2012 (the "Counterclaims").  Pfitsch and LAS move pursuant to Fed. R. Civ. P. 56 on the grounds that (a) Dayal's defamation claims concerning statements made in the underlying Complaint are barred by an absolute privilege at common law, and (b) the absolute privilege of Section 74 of the New York Civil Rights Law (hereafter "Section 74") bars Dayal's defamation claims concerning statements made by Ms. Pfitsch and LAS to the press.  Pfitsch and LAS move, as well, pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Dayal fails to allege actual malice as required in defamation claims brought by public officials such as Dayal under New York Times v. Sullivan, 376 U.S. 254 (1964), and its progeny.

The type of speech at issue in this case is so highly valued by our society and judicial system that a phalanx of privileges and near-insurmountable burdens of proof stand against defamation claims like those of Dayal.  Although the defamation claims against Pfitsch and LAS are less than clear, they appear to be based upon (a) statements in the Complaint filed by Pfitsch and LAS on behalf of their client, Santosh Bhardwaj, and (b) statements that Pfitsch and LAS allegedly made to the press which accurately summarized the pending lawsuit. Common law provides a broad absolute privilege to statements made in a complaint if those

statements are at all pertinent to the litigation.  Section 74 of the New York Civil Rights Law provides an absolute privilege to fair and accurate reports of or about judicial proceedings.

The common law privilege for statements made in a complaint is long established and exists "because the due administration of justice requires that the rights of clients should not be imperiled by subjecting their legal advisors to constant fear of suits for libel or slander." Youmans v. Smith, 153 N.Y. 214, 220 (N.Y. 1918).  This privilege requires dismissal of Dayal's defamation claims concerning statements in the Complaint.

The Section 74 privilege is also long established and serves, as it has for over a century, a fundamental public policy interest.  It is broadly applied to statements in and about judicial proceedings to further the "public interest in having proceedings of courts of justice public, not secret, for the greater security thus given for the proper administration of justice." Lee v. Brooklyn Union Publ'g Co., 209 N.Y. 245, 248 (1913).  Section 74 itself requires dismissal of those defamation claims concerning statements made to the press.

Even if these absolute privileges of common law and Section 74 were unavailable, Dayal's claims must fail because he has not pleaded that Ms. Pfitsch and LAS acted with actual malice when drafting the underlying Complaint and when making statements about that Complaint to the press.  Public officials such as Dayal—he is the Consul General of India at the Consulate General of India in New York—must plead and be prepared to prove by clear and convincing evidence that alleged defamatory statements were made with actual malice—that those who uttered them believed they were false or published with "serious doubts as to [their] truth." New York Times 376 U.S. at 279-80; St. Amant v. Thompson, 390 U.S. 727, 731 (1968). It is undisputed that Dayal is one of the most senior officers in India's national bureaucracy.

(Abrams Aff., Ex. G).  As such, he is a public official who must be prepared to meet this augmented burden, one he has failed even to plead.

## STATEMENT OF FACTS

### A.  The Parties

Dayal is the Consul General of India at the Consulate General of India in New York—a consulate that is of "very high importance" to the Indian Government.  (Counterclaims ¶ 16; Abrams Aff., Ex. G).  According to documents drafted on behalf of the Indian nation and offered by Dayal at a prior hearing, he is among the highest-ranking personnel in the Indian Foreign Service and holds a status equivalent to the highest position in the bureaucracy of the Government of India.  (Abrams Aff., Ex. G).

Pfitsch is an attorney employed at the LAS.  LAS is a not-for-profit corporation organized and existing in accordance with the laws of the State of New York.  (Counterclaims ¶ 148).

### B.  The Underlying Lawsuit

Plaintiff Santosh Bhardwaj, represented by Pfitsch and the LAS, commenced this action on June 20, 2011.  Plaintiff alleged that Dayal, his wife, and his daughter "lured" her from India "with false promises of a wage of ten dollars per hour, overtime pay, and good working conditions," but instead "confiscated her passport and subjected her to . . . forced labor and physical coercion, culminating in an incident of sexual harassment." (Complaint ¶ 2).

### C.  The Press Responds to the Filing of the Complaint

At 2:55 P.M. on June 20, 2011, Scott Shifrel, a reporter with the New York Daily News assigned to cover the federal courts, e-mailed Ms. Pfitsch and Karen Cacace, a supervising attorney at LAS.  (Pfitsch Aff., Ex. I). Shifrel's introductory e-mail states:

> Hello, I'm a reporter for the New York Daily News and I'm
> writing a story for tomorrow's paper about the lawsuit you filed in
> Manhattan Federal Court today. I was wondering if Ms. Bhardwaj
> was available to interview? Also, can you tell me how old she is
> now, and where in general she is living? Also, how many children
> does she have? I really appreciate your help as I'm working on a
> tight deadline. Thank you very much.

Id.

This e-mail was the first contact that anyone at LAS had with the press concerning Ms. Bhardwaj's case. (Pfitsch Aff. ¶ 4; Bath Aff. ¶ 3).

Later that afternoon, other reporters who noticed the filing also contacted LAS for comment about the pending case. (Bath Aff. ¶ 2). LAS responded to Shifrel's request and others by sending a press release which summarized the allegations in the Complaint and quoted Ms. Bhardwaj and Ms. Pfitsch. (Bath Aff., Ex. K). Shifrel's article was published on the website of the New York Daily News on June 20, 2011, the day that the Complaint was filed. (Abrams Aff., Ex. C).

The press release sent by LAS, entitled "Consul General of India Sued by Former Domestic Employee Who Worked Seven Days a Week for Less than One Dollar Per Hour," indicates by its title that its contents refer to allegations made in a pending lawsuit. (Bath Aff., Ex. K). The press release highlighted several allegations from the Complaint.

Given Dayal's role as a public official, significant press coverage followed the filing of the Complaint. Dayal himself responded to Ms. Bhardwaj's claims in several media outlets. (Abrams Aff., Ex. E, F). On June 24, 2011, through his attorney, Dayal submitted a letter to Homeland Security Secretary Janet Napolitano, Attorney General Eric Holder, and Secretary of State Hillary Clinton seeking the deportation of Ms. Bhardwaj. (Pfitsch Aff., Ex. J). In this letter, he held himself out as a public official who has "strengthen[ed] the relationship

- 4 -

between [the] United States and India." Id. On June 26, 2011, Dayal responded to the Complaint by holding a rally in support of himself at City Hall which was attended by members of the Indian-American Community.  (Abrams Aff., Ex. D).

### D.  The Amended Complaint

On August 12, 2011, Plaintiff filed a First Amended Complaint, which, inter alia, added a claim for retaliation based on the effort to have the Plaintiff deported after her commencement of this lawsuit.

On September 8, 2011, Defendants moved to dismiss the First Amended Complaint on the grounds that Defendants are immuned from suit under the Vienna Convention on Diplomatic Relations and the Vienna Convention on Consular Relations.  At a November 30, 2011 hearing, the Court denied Defendants' motion.

On December 20, 2011, Defendants filed their first Answer to the First Amended Complaint.

On December 30, 2011, Defendants amended their Answer to the First Amended Complaint and filed counterclaims against Ms. Bhardwaj.

On February 3, 2012, Defendants again amended their Answer to the First Amended Complaint and added their First Amended Counterclaims, asserting claims against Ms. Pfitsch and LAS.

### E.  The Defamation Counterclaims and Third Party Claims

On February 3, 2012, Dayal filed the Counterclaims, alleging defamation claims against Ms. Bhardwaj, Ms. Pfitsch, and LAS.  Dayal does not specifically allege which statements are supposedly defamatory, but simply refers to paragraphs 145 through 207 of his Counterclaims. (Counterclaims ¶¶ 208, 211).  These 62 paragraphs do nothing to particularize

which words published by Ms. Pfitsch or LAS are alleged to be defamatory, and many of these paragraphs do not reference any statements whatsoever. Dayal alleges broadly that Ms. Bhardwaj, Ms. Pfitsch, and LAS supposedly manufactured the claims in the Complaint "to create a false claim for damages and permit Bhardwaj to remain in the United States." (Counterclaims ¶¶ 209, 212).

Furthermore, the Counterclaims allege, in conclusory fashion, that Ms. Pfitsch and LAS communicated to the news media "false allegations that went beyond any allegation ever asserted in any pleading in this action, including repeated claims that Prabhu Dayal had engaged in unlawful and wrongful conduct." (Counterclaims ¶ 159). Dayal does nothing more to specify which statements made by Ms. Pfitsch and LAS supposedly "went beyond any allegation" in the pleadings—a hopeless task in any event because none of the statements did.

Again in conclusory fashion, the Counterclaims allege "upon information and belief" that Bhardwaj, Pfitsch, and LAS spoke to the press about the allegations before the original Complaint was filed and publicly available. (Counterclaims ¶¶ 165, 167). To support this claim, Dayal merely points out that two news articles were published online the same day that the Complaint was filed. (Counterclaims ¶¶ 160, 165-67). The first article cited is Shifrel's article which was posted on the New York Daily News website and the other article was posted at 10:08 P.M. New York time by the Times of India. The dissemination of the LAS Press Release after the Complaint was filed and after the media contacted LAS, as well as the chronology of Shifrel's knowledge of the lawsuit, is before the Court. Dayal's speculative assertion that any of the Counterclaim-Defendants contacted the press before the Complaint was filed is false.

- 6 -

Although the Counterclaims do not specify which statements are allegedly defamatory, it does reproduce portions of several news articles which contain information taken from LAS's press release and from the Complaint itself. (Counterclaims ¶¶ 160-62, 164, 166, 168-75, 177-82). These news excerpts quoted in the Counterclaims drew information from the LAS press release (and therefore the original Complaint) and focus on: (1) Ms. Bhardwaj's statement that she was not treated fairly by the Dayals; (2) the allegation that she was lured to the U.S. with promised pay of $10 per hour plus overtime, but only paid $1 per hour; (3) the allegation that Dayal took her passport when she arrived in the U.S.; and (4) the allegation that Dayal requested a massage from Bhardwaj in an incident she interpreted as a sexual advance. Id. Dayal also relies on comments allegedly made by Ms. Pfitsch to the press that it was illegal for him to take Ms. Bhardwaj's passport—an allegation that is contained in Ms. Bhardwaj's original Complaint and in the Amended Complaint. (See Counterclaims ¶¶ 169, 174, 177-78, 180-81). Just as the LAS press release makes clear that all of the allegations against Dayal are made in the context of pending litigation, all of the news articles quoted in the Counterclaims reference the pending lawsuit.

## ARGUMENT

I.    **Section 74 of the New York Civil Rights**
      **Law Requires Dismissal of the Defamation Claims**

      A. The Absolute Protections of
         New York Civil Rights Law Section 74

New York Civil Rights Law Section 74 provides an absolute privilege to reports of pending proceedings: "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative

- 7 -

proceeding or other official proceeding, or for any heading of the report which is a fair and true

headnote of the statement published."  (N.Y. Civ. Rights Law § 74 (2012)).

For a report to be "fair and true," and thus privileged, the report need only be a

"substantially accurate" account of the judicial proceeding.  Fuji Photo Film U.S.A., Inc. v.

McNulty, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009).  "All that is needed to claim the privilege

is that the alleged defamatory material 'may possibly bear on the issues in litigation now or at

some future time.'"  The Savage is Loose Co. v. United Artists Theatre Circuit, Inc., 413 F.

Supp. 555, 561 (S.D.N.Y. 1976) (Lasker, J.) (quoting Seltzer v. Fields, 244 N.Y.S.2d 792, 795-

96 (1st Dep't 1963)).  "When determining whether an article constitutes a 'fair and true' report,

the language used therein should not be dissected and analyzed with a lexicographer's

precision."  Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co., 49

N.Y.2d 63, 68 (1979).

It is well established that the Section 74 privilege "is absolute, and is not defeated

by the presence of malice or bad faith."  Glendora v. Gannett Suburban Newspapers, 608

N.Y.S.2d 239, 240 (1st Dep't 1994).

In The Savage Is Loose Co., this Court dismissed counterclaims for defamation

arising from statements made to Variety Magazine by the plaintiff's attorney in the original

matter regarding the original complaint.  The Savage Is Loose Co., 413 F. Supp. at 560; see also

Southridge Capital Mgmt., LLC v. Lowry, No. 1 Civ. 4880 (RO), 2003 U.S. Dist. LEXIS 153

(S.D.N.Y. Jan. 7, 2003) (Owen, J.) (dismissing plaintiff's defamation claim because complained-

of press release was a true and fair report of judicial proceeding).  In dismissing the defamation

claims, the Court noted that the Plaintiffs did not seek out Variety for the purpose of publicizing

the allegations of the complaint, but rather that Variety employees assigned to cover the federal

courts noticed the filing of the complaint and contacted the plaintiff's attorney for comment.  The Savage Is Loose Co., 413 F.Supp. at 561.  In applying the Section 74 privilege, this Court compared the Variety article with the complaint and found that the attorney's remarks merely restated the allegations of the complaint.  Id.

In Fishof v. Abady, the counterclaim defendant's attorney held a press conference at his law office where he handed out copies of the underlying complaint to members of the media.  Fishof v. Abady, 720 N.Y.S.2d 505 (1st Dep't 2001).  In finding the attorney to be protected by Section 74, the court stated that the privilege "extends to the release of background material with regard to the case . . . . This is certainly true where the description of the case is offered by the party's legal counsel."  Id. at 506.

B.  The Statements Describe a Judicial Proceeding

Although Dayal makes a feeble, speculative attempt to suggest that Ms. Pfitsch and LAS publicized details of Ms. Bharwdaj's case before the Complaint was filed, the affidavits of Ms. Pfitsch and Ms. Bath and the time-stamped e-mail correspondence with reporter Scott Shifrel show otherwise.  The original Complaint was filed sometime before 12:36 P.M. on June 20, 2011. (Pfitsch Aff. ¶ 3).  The articles cited in the Counterclaims were published thereafter from June 20 through July 1, 2011.  (Counterclaims ¶¶ 160, 166, 168-82).  Each of the articles quoted in the Counterclaims directly references the already pending lawsuit and describes the allegations of the Complaint.  Id.  As such, there can be no dispute that the statements attributed to Ms. Pfitsch or LAS in the Counterclaims describe a "judicial proceeding" and are thus privileged.

C.  The Statements Were a "Fair and True"
    <u>Report of a Judicial Proceeding</u>

          The LAS Press Release and statements made by Ms. Pfitsch were also "fair and

true" reports of the pending lawsuit, and thereby comply with the second requirement for

protection under Section 74.  Although Dayal avers that Pfitsch and LAS made false allegations

that "went beyond any allegation ever asserted in any pleading in this action, including repeated

claims that Prabhu Dayal had engaged in unlawful and wrongful conduct," he makes no effort to

point out which supposedly false allegations he is referring to.  (Counterclaims ¶ 159).

          Turning to the statements attributed to Pfitsch and LAS which are included in the

excerpts of the news articles quoted in the Counterclaims, an excerpt quoted repeatedly in the

Counterclaims states:

> 'The Dayal's did not treat me fairly,' [Bhardwaj] said in a
> statement issued by the Legal Aid Society, which is representing
> her. . . . Bhardwaj said she was lured to the US with a promise of
> an hourly pay of $10 and overtime pay.  Instead, <u>she said her
> payment was less than $1 per hour, and her passport was
> confiscated.  She also alleged that on one occasion Dayal told her
> she could only have the additional money if she gave him a
> 'massage.'</u>  'Bhardwaj interpreted this as a sexual advance and was
> deeply offended.  After that incident, Bhardwaj left the Dayals
> [sic] home and did not return,' said the statement.

(Counterclaims ¶¶ 168, 170-72).

          Like everything else in the Press Release, the allegations above squarely

summarize the allegations made in the Complaint.  Other articles included in the Counterclaims

allegedly quote Ms. Pfitsch discussing the allegation that Dayal unlawfully took Ms. Bhardwaj's

passport.  (Counterclaims ¶¶ 169, 174, 177-78, 180-81).  Again, these statements fairly and truly

address allegations made in the Complaint.  In fact, all the statements by Pfitsch and LAS cited

in the Counterclaims were made when the original Complaint was before the court.

Here, as in <u>The Savage is Loose</u>, a simple comparison of the press release and the statements of Ms. Pfitsch against the allegations in the Complaint demonstrates that the statements are fair and true reports of a judicial proceeding and privileged under Section 74. In sum, all statements published by LAS or Ms. Pfitsch easily meet the standard of being "substantially accurate" reports of matters that "may possibly bear on the issues in litigation now or at some future time" so as to qualify for the Section 74 privilege. <u>See</u> <u>Fuji Photo Film U.S.A., Inc.</u>, 669 F. Supp. 2d at 411; <u>The Savage is Loose Co.</u>, 413 F. Supp. at 561.

## II.   **Statements Made in the Complaint Itself Are Absolutely Privileged From Counterclaims**

It is a deeply rooted principle of our legal system that statements made in a complaint or in any other legal proceedings are absolutely privileged if the statements are "at all pertinent to the litigation." <u>Mosesson</u> v. <u>Jacob D. Fuchsberg Law Firm</u>, 683 N.Y.S.2d 88, 89 (1st Dep't 1999) (<u>citing</u> <u>Youmans</u>, 153 N.Y. at 219). The test for whether a statement is "at all pertinent to the litigation" is very broad, encompassing "anything that may possibly be pertinent." <u>Andrews</u> v. <u>Gardner</u>, 224 N.Y. 440, 445 (1918). The question of whether a statement is pertinent and protected by the privilege "is a question of law for the court." <u>Sexter & Warmflash, P.C.</u> v. <u>Magrabe</u>, 828 N.Y.S.2d 315, 324 (1st Dep't 2007).

Here, Dayal's claims that statements in the original underlying Complaint were defamatory are clearly barred by absolute privilege. Protecting legal advisors who zealously advocate for their clients from defamation claims like Dayal's is the reason that the absolute privilege exists. All allegations contained in the original Complaint easily meet the standard of being "possibly pertinent" to the litigation because they were contained in the document which commenced the litigation and they all dealt with Ms. Bhardwaj's conditions while she worked

- 11 -

for Dayal.  As such, Dayal's Counterclaims against statements in the Complaint are barred by
absolute privilege.

**III.  Dayal Is a Public Official Whose
Counterclaims Fail to Allege the Requisite Actual Malice**

Even if the privileges listed above were unavailable, Dayal must still
appropriately allege, <u>inter alia,</u> actual malice for his defamation claim to continue.  For reasons
set forth below, Dayal is indisputably a public official.  As such, he must establish by clear and
convincing evidence that the publication was made with actual malice.  <u>New York Times</u> v.
<u>Sullivan</u>, 376 U.S. 254.  Applying this rule to this case, he must prove by clear and convincing
evidence that Ms. Pfitsch and LAS in fact either knew what they were saying was false or
entertained serious doubts that the Complaint and their statements to the press were true.  <u>See</u> <u>St.</u>
<u>Amant</u> v. <u>Thompson</u> 390 U.S. at 731.  Whether Ms. Pfitsch and LAS acted with actual malice
must be judged according to their subjective state of mind—not according to a "reasonable"
person standard.  <u>See</u> <u>id</u>.

In <u>Gertz</u> v. <u>Robert Welch. Inc.</u>, the U.S. Supreme Court distinguished a private
figure from a public figure subject to the actual malice rule by stating that "[p]ublic officials and
public figures usually enjoy significantly greater access to the channels of effective
communication and hence have a more realistic opportunity to counteract false statements than
private individuals normally enjoy."  <u>Gertz</u> v. <u>Robert Welch, Inc.</u>, 418 U.S. 323, 344 (1974).
Moreover, "[a]n individual who decides to seek governmental office must accept certain
necessary consequences of that involvement in public affairs," and is more appropriately
required to prove actual malice if he seeks recovery for alleged defamation.  <u>Id</u>.

In a prior hearing in this case, Mr. Dayal presented to the court an affidavit by Ashok Tomar, a Section Officer with the Ministry of Internal Affairs of the Indian Government in New Delhi, India.  (Abrams Aff., Ex. G).  This affidavit states that Dayal "is one of the senior-most diplomats of the Indian Foreign Service," having "previously served as Ambassador to Kuwait . . . and Morocco."  Id.  This affidavit confirms that, as Consul General, Dayal is posted as a "senior Ambassador level officer" in New York and that he "is an official representative and agent of the Government of India."  Id.  In his Counterclaims, Dayal also acknowledges that he is the most senior officer at the Consulate General of India in New York.  (Counterclaims ¶ 16).

Like the defamation plaintiff in Desai v. Hersch, also involving an Indian plaintiff who was held to be a public figure, Dayal is a senior official in the Indian government.  Desai v. Hersch, 719 F. Supp. 670, 673 (N.D. Ill. 1989).  In finding the defamation plaintiff to be a public figure, the court in Desai v. Hersch noted that the plaintiff was a "political official of [India] the world's second most populous country" and, as such, had "access to media channels."  Id.[1]

True to his status, Dayal has also been exercising the "channels of effective communication" discussed in Gertz.  After the original Complaint was filed, Dayal spoke to the media and was quoted by numerous international news outlets refuting Ms. Bhardwaj's allegations.  (Abrams Aff., Ex. E, F).  However, he did not stop there.  In his letter of June 24, 2011, he wrote, through his attorney, to Secretaries Napolitano and Clinton and to Attorney General Holder "formally request[ing] that removal proceedings be commenced against Santosh Bhardwaj."  In this letter, he clearly uses his status as a public figure to request action against his

---

[1]    Another prominent case in which a foreign public official was held to be subject to the augmented pleading requirements of New York Times v. Sullivan is Sharon v. Time, Inc.  There, the court confirmed that "Ariel Sharon, as a minister of a foreign government, is a 'public official,' or, in any event, a 'public figure.'" Sharon v. Time, Inc., 599 F. Supp. 538, 563 (S.D.N.Y. 1984).

accuser by senior U.S. officials. In the letter, he holds himself out as a public official who has

"strengthen[ed] the relationship between [the] United States and India." (Pfitsch Aff., Ex. J). On

June 26, 2011, he further responded to the Complaint by flexing his influence as only a public

figure or public official can—by calling a rally in his own support at City Hall, which was

attended by leaders of the Indian-American community. (Abrams Aff., Ex. D).

Given the facts above, it cannot seriously be disputed that Dayal is a public

official for the purposes of this lawsuit. Yet, he failed to plead that Ms. Pfitsch or LAS acted

with actual malice when they published any of the statements which discussed this case. For this

reason, even if Dayal's defamation claims were not barred by absolute privilege, his pleadings

are fatally deficient and cannot survive this motion to dismiss under Rule 12(b)(6).

## CONCLUSION

The Counterclaims asserted against Hollis Pfitsch and The Legal Aid Society

should be dismissed.

Dated:   New York, New York
          March 8, 2012

Respectfully submitted,

CAHILL GORDON & REINDEL LLP

By:  _____ s/ David G. Januszewski _____

Floyd Abrams
David G. Januszewski
Eighty Pine Street
New York, NY 10005
(212) 701-3000

ATTORNEYS FOR ADDITIONAL
DEFENDANTS ON COUNTERCLAIMS
HOLLIS PFITSCH AND THE LEGAL AID
SOCIETY