UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SANTOSH BHARDWAJ,                                :

                  Plaintiff,              :

      -against-                                  :

PRABHU DAYAL, CHANDINI DAYAL and       :
AKANSHA DAYAL,

                            :

             Defendants.
------------------------------------------------------------x

PRABHU DAYAL,                                    :

           Counterclaim-Plaintiff,         :

      -against-                                  :

SANTOSH BHARDWAJ,                                :

          Counterclaim Defendant,        :

      -and-                                      :

HOLLIS PFITSCH and                               :
THE LEGAL AID SOCIETY,

                            :

  Additional Defendants on Counterclaims.
------------------------------------------------------------x

Index No. 11 Civ. 4170 (AKH)

## MEMORANDUM OF LAW OF COUNTERCLAIM PLAINTIFF PRABHU DAYAL IN OPPOSITION TO MOTIONS BY COUNTERCLAIM DEFENDANTS TO <u>DISMISS THE COUNTERCLAIMS</u>

Defendant and Counterclaim Plaintiff Prabhu Dayal submits this memorandum of law in opposition to the motions filed by Plaintiff and Counterclaim Defendant Santosh Bhardwaj and Additional Defendants on Counterclaims Hollis Pfitsch and The Legal Aid Society to dismiss the Counterclaims asserted in this action (collectively, the "Counterclaim Defendants").

## PRELIMINARY STATEMENT

This action was commenced by the Counterclaim Defendants filing outrageous claims, which generated worldwide publicity, and which were so fraudulent that many of them were then voluntarily withdrawn even before any responsive papers could be filed. The blatantly false accusations against Dayal included a claim that he violated a criminal statute by possessing "without lawful authority" Bhardwaj's passport. In fact, Bhardwaj's passport was an Official Passport that is only to be used for official, authorized travel. Such official passports should be kept in safe custody and released when needed for official visits. The conduct of the Counterclaim Defendants in publicizing false and defamatory statements is not protected by any privilege. Accordingly, the dismissal motions filed by the Counterclaim Defendants should be summarily denied.

The dismissal moving papers included a declaration under the penalty of perjury of Bhardwaj stating that she had never spoken with any reporter about this case. Paragraph 173 of the First Amended Counterclaims quoted a report issued by The Lahore Times on June 21, 2011, that included the following statement: "Meanwhile, Santosh who is 45 years of age and has four children to take care of, said she filed the complaint through a firm representing her, the 'Legal Aid Society.'" Through gross negligence, or a possible intentional attempt to mislead this Court, Bhardwaj and LAS have submitted what appears to constitute a false sworn affirmation. At a minimum, this raises substantial questions of fact that mandate depositions of Bhardwaj and LAS. The filing of a false affirmation would properly be deemed to bear on Bhardwaj's overall credibility and would constitute a violation of 18 U.S.C. § 1621.

The Counterclaim Defendants' motions should be denied in their entirety.

# ARGUMENT

## I

## PUBLICIZING FALSE AND DEFAMATORY STATEMENTS CONTAINED IN LEGAL PLEADINGS IS NOT PROTECTED BY ANY PRIVILEGE AND SUPPORTS THE FILING OF DEFAMATION CLAIMS

By filing fraudulent claims for the purpose of generating widespread publicity and then voluntarily deleting many of those claims from an amended complaint, the Counterclaim Defendants engaged in manipulation of the legal process which has been held to be unprotected by any privilege.

> "A party who maliciously asserts false and defamatory charges in judicial proceedings for the purpose of publicizing them in the press is not entitled to claim immunity, statutory or otherwise."

The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc., 413 F.Supp. 555, 561 (S.D.N.Y. 1976) (citing Williams v. Williams, 23 N.Y.2d 592, 599, 298 N.Y.S.2d 473 (1969)).

> "[I]f a party has manipulated the legal process, or initiated litigation, in order to defame or injure another under the protective cloak of privilege, the privilege should not be applied."

Andrews v. Steinberg, 122 Misc.2d 468, 476, 471 N.Y.S.2d 764 (N.Y.Co. 1983) (citing Savage is Loose, supra, and Williams v. Williams, supra.).

When, as in the instant case, allegations are included in a complaint for the purpose of publicly maligning the defendant in reports by the press, the judicial process is subverted and the allegations are entitled to no privilege.

> "Statements made in a pleading and fair and true reports of such pleadings are absolutely privileged. However, Technicare claims that the statements were made and delivered to the press by Bridge for the purpose of publicly maligning its products. It has alleged that the complaint was unfounded, instituted with malice, and for the purpose of publicly maligning its products. It has alleged that

the complaint was unfounded, instituted with malice, and for the purpose of publicly disseminating libelous statements about its C.A.T. Scanners. In other words, it contends that the judicial process was subverted by the Bridge defendants for the purpose of disseminating false statements. Under New York law, such a claim is barred neither by the absolute privilege afforded statements made in pleadings, nor by the statutory privilege afforded fair and true reports of such statements."

Bridge C.A.T. Scan Associates v. Ohio-Nuclear Inc., 608 F.Supp. 1187, 1194 (S.D.N.Y. 1985).

The Bridge decision extensively discussed and relied upon the New York Court of Appeals decision in Williams v. Williams, 23 N.Y.2d 592, 298 N.Y.S.2d 333 (1969):

"In *Williams*, as here, the plaintiff claimed that the defendant had maliciously instituted a prior suit for the purpose of disseminating false statements. … The Court of Appeals upheld the denial of the motion [by defendants to dismiss the complaint], reasoning that the malicious institution of a judicial proceeding alleging false and defamatory charges and subsequent circulation of a press release or other communication based thereon was not privileged."

608 F.Supp. at 1194.

In Bridge, the allegations merely maligned products manufactured by a company, and those unfounded, malicious allegations were held to be outside of any privilege. Giving rise to an infinitely worse situation, the Counterclaim Defendants alleged in both the Initial Complaint and the Amended Complaint a completely unfounded, malicious, false allegation that Prabhu Dayal had violated a criminal statute by possessing "without lawful authority" Bhardwaj's passport. Further giving rise to an infinitely worse situation, the Counterclaim Defendants made outrageous allegations of sexual harassment and purported misconduct that were so blatantly false that the Counterclaim Defendants voluntarily withdrew those allegations from the Amended Complaint which was filed even before responsive papers were to be filed.

An analogous situation existed in the Bridge case in which an initial complaint was voluntarily withdrawn, only to be followed by another similar action:

> "After voluntarily dismissing their class action complaint filed in
> the Eastern District, Bridge and Harbor instituted this action,
> asserting once more claims for breach of contract, defective
> manufacture and design, and fraud, but upon an individual rather
> than class basis. ...Technicare has also raised an issue of fact as to
> whether the prior class action complaint was instituted with malice
> and solely for the purpose of injuring its product's reputation."

608 F.Supp. at 1190 & 1196.

In <u>Bridge</u>, the voluntary withdrawal of a class action complaint, which was widely

disseminated, followed by the filing of another similar action, but not as a class action, was

specifically found to be a question of fact defeating summary judgment.

In the instant action, the Counterclaim Defendants prepared and disseminated one

or more press releases which received worldwide press coverage of the Initial Complaint. <u>See</u>

Counterclaim ¶¶ 160-82. Such conduct is outside of any privilege:

> "The delivery of a copy or report of a complaint to the press is not
> a statement made during the course of judicial proceedings and
> therefore is not protected by the common law privilege afforded
> such statements. ... Delivery of a complaint or summary of a
> complaint to the press is neither essential nor relevant to the
> judicial proceedings themselves.  It in no way aids a party in
> furthering his or her cause before a judicial tribunal and, hence,
> must fall outside the privilege afforded statements made during the
> course of judicial proceedings.  Once filed, the complaint is a
> public document with access to it available to the public and the
> news media.  <u>But for the plaintiff, purposely and maliciously, to
> stimulate press coverage and wide publicity of a complaint with its
> allegedly false and malicious statements is beyond the pale of
> protection.</u>  Since the New York courts have found Section 74 [of
> the New York Civil Rights Law] inapplicable to allegations such
> as Technicare's, the Court finds that neither the common law
> privilege afforded statements made during the course of judicial
> proceedings, nor the statutory privilege, bars its claims as a matter
> of law." (citations omitted)(emphasis added)

<u>Bridge</u>, 608 F.Supp. at 1195.

The <u>Williams</u> decision, discussed above, specifically cited and rejected any reliance upon Civil Rights Law § 74. That section reads as follows:

> "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

> "This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof."

N.Y. Civil Rights Law § 74 (McKinney 2009).

The New York Court of Appeals specifically delineated that § 74 does not protect publicity of false and defamatory charges made in litigation papers:

> "We conclude that it was never the intention of the Legislature in enacting section 74 to allow 'any person' to maliciously institute a judicial proceeding alleging false and defamatory charges, and to then circulate a press release or other communication based thereon and escape liability by invoking the statute. 'Society has a pervasive and strong interest in preventing and redressing attacks upon reputation', and the courts are delegated with the responsibility of protecting that right."

<u>Williams</u>, 23 N.Y.2d at 599, quoting <u>Rosenbaum v. Baer</u>, 383 U.S. 75, 86.

Quoting <u>Williams</u> and <u>Bridge</u>, <u>supra</u>, Judge Sweet has held that:

> "Further, under New York law, communications to the press about pending litigation are not privileged. A defendant cannot claim an absolute privilege by 'institut[ing] a judicial proceeding … and … then circulat[ing] a press release or other communication based thereon….' Applying New York law, this court has recently held that '[t]he delivery of a copy or report of a complaint to the press is not a statement made during the course of judicial proceedings and therefore is not protected by the common law privilege afforded such statements.' Liability for disseminating defamatory statements contained in a pleading to the press '[u]nder New York law … is barred neither by the absolute privilege afforded statements made in pleadings, nor by the statutory privilege

afforded fair and true reports of such statements.' (internal quotations and ellipsis in original; citations omitted)

<u>Block v. First Blood Assocs. V. Sirota</u>, 691 F.Supp. 685, 699 (S.D.N.Y. 1988).

Judge Sweet has addressed slanderous statements to the press noting that:

"While Willson contends that these statements were privileged under both the common law and New York statutory law ... '[t]he privilege does not extend, however, to parties who maliciously institute a proceeding alleging false and defamatory charges and publicize them in the press.'"

<u>Willson v. Assoc. of Graduates of the U.S. Military Acad.</u>, 946 F.Supp. 294, 297 (S.D.N.Y.

1996), quoting <u>McNally v. Yarnall</u>, 746 F.Supp. 853, 855 (S.D.N.Y. 1991).

The Counterclaim Defendants engaged in a blatant and outrageous scheme to file

the Initial Complaint containing numerous false and defamatory allegations including sexual

harassment which were voluntarily withdrawn but only after the Counterclaim Defendants had

instigated world-wide publicity as to those allegations.

## II

## THE COUNTERCLAIM DEFENDANTS
## HAVE COMITTED DEFAMATION PER SE

The Counterclaim Defendants have repeatedly, and categorically falsely, accused

Prabhu Dayal of criminal activity. Those accusations constitute defamation <u>per</u> <u>se</u>.

"To establish a cause of action in slander, the plaintiff must show either that the statement complained of caused him or her 'special harm' or that it constituted slander 'per se.' Generally speaking, 'special harm' means 'the loss of something having economic or pecuniary value.' <u>The four categories of statements that have historically constituted slander per se in New York are those that (i) charge the plaintiff with a serious crime;</u> (ii) tend to injure the plaintiff in his or her trade, business or profession; (iii) imply that the plaintiff has a loathsome disease; or (iv) impute unchastity to a woman." (citations omitted; emphasis added)

7

Albert v. Loksen, 239 F.3d 256, 271 (2d Cir. 2001), quoting Liberman v. Gelstein, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857 (1992).

## A.     Alleged Forced Labor

The Original Complaint and the Amended Complaint contained identical allegations that the "Defendants subjected Plaintiff to forced labor in violation of 18 U.S.C. § 1589," including, but not limited to, the allegation that Bhardwaj had been "knowingly threatened with physical restraint and serious harm to obtain Plaintiff's labor or services in violation of 18 U.S.C. § 1589(a)(3). See Original Complaint at ¶¶ 89-92; First Amended Complaint, at ¶¶ 74-77. Section 1589(d) provides that: "Whoever violates this section shall be fined under this title, imprisoned not more than 20 years or both."

Charging a violation of that criminal statute clearly constitutes "charg[ing] the plaintiff with a serious crime" which is the first category of statements that have historically constituted slander per se in New York, as noted above.

The First Amended Complaint omitted the following allegations that had been included in the Original Complaint that:

- She was forced to work when she did not feel well (OC ¶ 43);

- She was given only a short break of about 15-25 minutes for meals (OC ¶ 44);

- She didn't have personal knowledge of how much money Prabhu Dayal was paying to her (OC ¶ 49);

- She was given no cash in hand during the entire time that she worked in Defendants' household (OC ¶ 50); and

- She was kept continuously busy so that she had almost no time to leave Defendants' house alone (OC ¶ 51).

Those allegations received widespread news publicity before they were withdrawn.  See First Amended Counterclaims, at ¶¶ 159-82.

Bhardwaj's First Amended Complaint, at paragraph 35, did include the blunderbuss allegation that: "Ms. Bhardwaj cooked meals, ironed, washed, dried, folded and stored clothing, made beds, swept, mopped, vacuumed, dusted, cleaned toilets, washed windows, polished silver, served food and tea, provided on-call service, and polished shoes, among other tasks, for all members of the Dayal family."  Bhardwaj also alleges that she was "generally required" to work long hours, that "she was always kept busy by Defendants' orders" and was given "tasks to keep her continuously busy."  Id. at ¶¶ 36-37.

Paragraphs 74 through 77 of Bhardwaj's First Amended Complaint then merely parroted the language of 18 U.S.C. § 1589 without stating any factual basis whatsoever for any violation of that section.

Those generalized allegations do not constitute criminal forced labor.  The reported cases finding violations of 18 U.S.C. § 1589 dealt with dramatically different situations.  See U.S. v. Sabhnani, 599 F.3d 215, 225-27 (2d Cir. 2010) (domestic servant was beaten with various objects, boiling water was thrown on her, various parts of her body were mutilated, etc.); U.S. v. Marcus, 628 F.3d 36, 39-40 (2d Cir. 2010) (woman was tortured, beaten, hung from a beam, drugged with Valium, a large surgical needle was inserted through her tongue, etc.).

## B.    Alleged Withholding Of Bhardwaj's Passport

The Original Complaint and the Amended Complaint contained identical allegations that the "Defendants" had engaged in the following allegedly criminal conduct:

> "Defendants knowingly concealed, removed, confiscated, and/or
> possessed Plaintiff's passports and other immigration-related
> documents in the course of a violation of and/or with the intent to

violate 18 U.S.C. §§ 1589 and 1590 and therefore violated 18
U.S.C. § 1592.

"Defendants knowingly concealed, removed, confiscated, and/or
possessed Plaintiff's passport and other immigration-related
documents to prevent or restrict or to attempt to prevent or restrict,
without lawful authority, Plaintiff's liberty to move or travel, in
order to maintain Plaintiff's labor and services. Plaintiff is a
victim of a severe form of trafficking as defined in the Trafficking
Victims Protection Act of 2003, section 103. Therefore,
Defendants' acts violated 18 U.S.C. § 1592."

Original Complaint, at ¶¶ 94-95; Amended Complaint, at ¶¶ 79-80.

The relevant provisions of Section 1592 are as follows:

"(a) Whoever knowingly destroys, conceals, removes, confiscates,
or possesses any actual or purported passport or other immigration
document, or any other actual or purported government
identification documents, of another person –

(3) to prevent or restrict or to attempt to prevent or restrict, without
lawful authority, the person's liberty to move or travel, in order to
maintain the labor or services of that person, when the person is or
has been a victim of a severe form of trafficking in persons, as
defined in section 103 of the Trafficking Victims Protection Act of
2000, shall be fined under this title or imprisoned for not more than
5 years, or both."

Charging a violation of 28 U.S.C. § 1592 clearly constitutes "charg[ing] the

plaintiff with a serious crime" which is the first category of statements that have historically

constituted slander per se in New York, as noted above.

The Counterclaim Defendants do not address a single word to the allegations of

paragraphs 183 and 184 of the Counterclaims quoted below:

183. Attached hereto as Exhibit A is a copy of the "Official
Passport" issued to Bhardwaj by the Republic of India ("Bhardwaj
Passport"). Official Passports are governed by completely
different conditions and limitations as compared to non-official
passports provided to common citizens. The Bhardwaj Passport
was not her private passport and was governed by the Indian

10

Government's restrictions, rules and regulations controlling Official Passports.

184. The Bhardwaj Passport included the following Regulations:

"REGULATIONS"
"VALIDITY OF OFFICIAL PASSPORT"
"AN OFFICIAL PASSPORT WILL AUTOMATICALLY CEASE TO BE VALID IF THE PERSON TO WHOM IT WAS ISSUED CEASES TO EXERCISE THE FUNCTIONS WHICH RENDERED HIM ELIGIBLE TO RECEIVE AN OFFICIAL PASSPORT. IN SUCH AN EVENT, THE OFFICIAL PASSPORT WILL HAVE TO BE SURRENDERED TO THE MINISTRY OF EXTERNAL AFFAIRS, NEW DELHI OR TO AN INDIAN MISSION/POST ABROAD...."

"CAUTION"
"THIS PASSPORT IS THE PROPERTY OF THE GOVERN-MENT OF INDIA...." (emphasis added)

An affidavit on behalf of the Ministry of External Affairs for the Government of India, sworn to on January 27, 2012, is attached as Exhibit B to the Counterclaims and states that: "the Government of India has instructed that to prevent misuse of diplomatic/official passports, the passports should be kept in safe custody of the Administration of the Ministry/Department concerned and released when needed for official visits." Accordingly, paragraph 186 of the Counterclaims states that Bhardwaj delivered her Official Passport to Prabhu Dayal to be held in safe custody.

Paragraph 186 of the Counterclaims also notes that the validity of Bhardwaj's Official Passport was expiring by its own terms on February 5, 2010 and it was in the process of being renewed when Bhardwaj absconded on January 28, 2010.

Paragraphs 159 through 182 of the Counterclaims detail just a portion of the world-wide news reporting that referenced assertions by Bhardwaj, Pfitsch and LAS that Prabhu Dayal had "illegally" taken Bhardwaj's passport. Bhardwaj, Pfitsch and LAS do not address or

challenge any of the following statements to the worldwide press stating the categorically false

assertion that Prabhu Dayal had "illegally" confiscated Bhardwaj's passport:

> "One of her lawyers, Hollis Pfitsch, said … it is expressly illegal
> for any employer to take a worker's passport."

Counterclaims ¶ 169, quoting The Economic Times.

> "'The Dayals did not treat me fairly,' [Bhardwaj] said in a
> statement issued by the Legal Aid Society, which is representing
> her. … Bhardwaj said … her passport was confiscated.

Counterclaims ¶ 170, quoting FirstPost.

> "'The Dayals did not treat me fairly,' [Bhardwaj] said in a
> statement issued by the Legal Aid Society, which is representing
> her. … Bhardwaj said … her passport was confiscated."

Counterclaims ¶ 171, quoting India Today.

> "'The Dayals did not treat me fairly,' [Bhardwaj] said in a
> statement issued by the Legal Aid Society, which is representing
> her. … Bhardwaj said … her passport was confiscated."

Counterclaims ¶ 172, quoting NDTV.

> "The maid [ie. Bhardwaj] further alleged her 'boss' of confiscating
> her documents i.e. passport and other legal documents etc, …
> Santosh is not only determined to have her passport back at the
> earliest.…"

Counterclaims ¶ 173, quoting The Lahore Times.

> "One of [Bhardwaj's] lawyers, Hollis Pfitsch … said it is expressly
> illegal for any employer to take a worker's passport.

Counterclaim ¶ 174, quoting CBS News.

> "Bhardwaj said … her passport was confiscated. 'The Dayals did
> not treat me fairly,' she said in a statement issued by the Legal Aid
> Society, which is representing her."

Counterclaims ¶ 175, quoting Deccan Herald.

> "Pfitsch, a lawyer with the Legal Aid Society, acknowledged that in many such cases there is a lot of 'he said she said' … Anyway, Prabhu Dayal needs to do a lot of explanations why he was, illegally, holding her passport, all these years…"

Counterclaims ¶ 177, quoting The Press Trust of India.

> "One of [Bhardwaj's] lawyers, Hollis Pfitsch, said … it is expressly illegal for any employer to take a worker's passport."

Counterclaims ¶ 178, quoting Arab Times Kuwait English Daily.

> "I want my passport returned,' said Ms. Bhardwaj, mother of four children, in a statement issued by the Legal Aid Society, which is representing her."

Counterclaims ¶ 179, quoting The Asian Age.

> "One of [Bhardwaj's] lawyers, Hollis Pfitsch … said it is expressly illegal for any employer to take a worker's passport."

Counterclaims ¶ 180, quoting the Jagran Post.

> "[O]ne of the lawyers, Hollis Pfitsch, said … it was clearly illegal for any employer to take away any worker's passport."

Counterclaims ¶ 181, quoting the Overseas India Weekly.

In their motion papers, the Counterclaim Defendants never address a single word purporting to defend their false statements categorically asserting that it was "illegal" for Bhardwaj's Official Passport to be held, when in fact that passport could not be used for anything other than authorized, official travel and was to be kept in safe custody to prevent its misuse. The uncontested fact is that "Prabhu Dayal informed Bhardwaj that she had been admitted to the United States solely to work with him at the New York Consulate"[1] and that is conceded on these summary judgment motions by the Counterclaim Defendants.

---

[1] First Amended Counterclaim, at ¶ 155.

The Counterclaim Defendants submit nothing to contest their per se defamation through worldwide publicity of the categorically false assertion that Bhardwaj's Official Passport was "illegally" withheld.

## III

### MALICE IS PLAINLY ESTABLISHED BY THE VOLUNTARY FILING OF AN AMENDED COMPLAINT THAT WITHDREW FALSE ALLEGATIONS IN THE ORIGINAL COMPLAINT WHICH ENGENDERED WORLDWIDE PUBLICITY

The knowing and intentional falsity of many allegations in the Original Complaint is conclusively established by the simple fact that those allegations were voluntarily withdrawn by the Counterclaim Defendants even before any responsive papers were filed. It would be a complete perversion of defamation law to hold that parties may file egregious allegations in an initial complaint, and issue a press release and make statements to news reporting agencies about those salacious allegations, but escape any liability whatsoever for doing so simply by quickly filing an amended complaint omitting those allegations. This conduct by the Counterclaim Defendants reflects an immense contempt for the legal, ethical and professional standards that govern their actions.

The Amended Complaint omits numerous different categories of allegations that were included in the Original Complaint and publicized to news agencies throughout the world, including seven paragraphs under the heading "Sexual Harassment and Escape" (Original Complaint paragraphs 75-82) and other allegations that:

- Prabhu Dayal would buy her shoes and clothing (OC[2] ¶ 25);

- Prabhu Dayal promised to find employment for her children (OC¶ 25);

- Prabhu Dayal and his wife trusted her, liked her work and honesty (OC ¶ 25);

---

[2] "OC ¶___" refers to the paragraph in the original Complaint containing the allegation omitted from the Amended Complaint.

- She would be paid more if she had to care for people other than Prabhu Dayal and his wife (OC ¶ 26);

- She had to sleep on a mattress on the floor in a small storage room (OC ¶ 37);

- She had no private bathroom (OC ¶ 38);

- Prabhu Dayal had withheld tips given by guests for her (OC ¶ 42);

- She was forced to work on holidays and worked every day (OC ¶ 43);

- She was forced to work when she did not feel well (OC ¶ 43);

- She was given only a short break of about 15-25 minutes for meals (OC ¶ 44);

- She wasn't given new shoes or clothing, only soap and toothpaste (OC ¶ 46);

- She didn't have personal knowledge of how much money Prabhu Dayal was paying to her (OC ¶ 49);

- She was given no cash in hand during the entire time that she worked in Defendants' household (OC ¶ 50);

- She was kept continuously busy so that she had almost no time to leave Defendants' house alone (OC ¶ 51);

- Defendants did not orient her to New York, did not explain how to use public transportation (¶ 52);

- She believed that if she went out she would be arrested and deported because she was without her passport which Prabhu Dayal kept (¶ 53); and

- She was not allowed to make telephone calls to her family in India (¶ 54).

Bhardwaj filed her original Complaint on June 20, 2011, and – prior to any responsive papers being filed – filed her Amended Complaint on August 12, 2011. Bhardwaj waited less than nine weeks to dramatically alter her Original Complaint, completely eliminating,

for example, seven paragraphs under the heading "Sexual Harassment and Escape" which were plainly designed for the sole purposes of generating publicity that would destroy Prabhu Dayal's stature as a diplomat and obtaining a settlement payment. Prabhu Dayal did not succumb to that despicable conduct by Bhardwaj, Pfitsch and LAS.

IV

### THE COUNTERCLAIM DEFENDANTS SUBMIT ASTONISHINGLY MODEST MOTION PAPERS THAT FUNDAMENTALLY MISTATE THE LAW

Bhardwaj effectively rests her dismissal motion entirely on general references to the fair reporting privilege, assertions that the Counterclaims relate solely to matters of opinion, and what is termed to be an "Absolute Litigation Privilege."

Point I above eliminates any issue concerning the purported "Absolute Litigation Privilege." Bhardwaj bases that argument on citations to nine cases, six of which are unreported cases by Eastern, Northern and Southern District of New York judges who plainly did not intend for those cases to have precedential value since they were not submitted for official publication. By contrast, Point I above relies entirely on reported cases from the United States Supreme Court, the New York Court of Appeals and other courts that negate the applicability of the cases cited by Bhardwaj under the facts of the instant action.

Bhardwaj also argues that her statements to the media are pure opinion and therefore not defamatory as a matter of law. It is not a matter of opinion to repeatedly broadcast to news media around the world that Prabhu Dayal supposedly has committed an "unlawful" act by keeping Bhardwaj's passport in safe custody when it was not being used for officially authorized travel. That allegation has an extremely precise meaning, is perfectly capable of being proven absolutely false, was known by Bhardwaj to be false based on the uncontested

16

allegation of paragraph 155 of the First Amended Counterclaims that Prabhu Dayal had informed Bhardwaj that she had been admitted to the United States solely to work at the New York Consulate, and definitively conveys the false impression that Prabhu Dayal "unlawfully" withheld her passport. Cited above in Point III are the numerous defamatory allegations included in the Original Complaint which were voluntarily omitted by Bhardwaj from her Amended Complaint. The voluntary withdrawal of those allegations only after they had generated worldwide publicity, and before any responsive papers could be filed, is plain evidence that those allegations were groundless and made solely to generate publicity.[3]

The withdrawal of those claims takes this case outside of any "fair reporting" privilege. In defining the scope of privileges against slander, the New York Court of Appeals has held that:

> "But the privilege is conditioned on its proper exercise, and cannot shelter statements published with malice or with knowledge of their falsity or reckless disregard as to their truth or falsity."

Loughry v. Lincoln Nat'l Bank, 67 N.Y.2d 369, 376, 502 N.Y.S.2d 965 (1986).

By voluntarily withdrawing scandalous allegations from the Original Complaint, after they had generated worldwide publicity, the Counterclaim Defendants conceded that those allegations were made with malice and knowledge of their falsity or reckless disregard as to their truth or falsity.[4]

---

[3] Bhardwaj cites several cases on pages 7-8 of her brief for the unremarkable distinction that defamation actions are to be based upon statements of fact rather than opinion. Bhardwaj's false statement that Prabhu Dayal had unlawfully withheld her passport is indisputably a statement of fact. More than one dozen statements of other facts that were alleged in the original Complaint were voluntarily omitted from the Amended Complaint after those allegations of fact had engendered widespread publicity. See pages 13-14 above.

[4] Bhardwaj cites several reported cases on pages 9-11 of her brief for the unremarkable propositions that statements made in affidavits filed in court or stated in a complaint to the Grievance Committee are privileged. None of those cases address a complaint that is filed containing allegations which are utilized to generate worldwide publicity and which are then immediately withdrawn by the filing of an amended complaint.

LAS submits an astonishingly perfunctory, and inaccurate, memorandum of law. LAS submits one and one-half pages devoted to the Savage case, completely ignoring the relevant holding quoted above in Point I that:

> "A party who maliciously asserts false and defamatory charges in judicial proceedings for the purpose of publicizing them in the press is not entitled to claim immunity, statutory or otherwise."

The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc., 413 F.Supp. 555, 561 (S.D.N.Y. 1976) (citing Williams v. Williams, 23 N.Y.2d 592, 599, 298 N.Y.S.2d 473 (1969)).[5]

LAS then devotes a bit more than one page to the argument that statements made by Bhardwaj and LAS to the press were merely "fair reporting" of a judicial proceeding. LAS completely ignores the categorically false allegation that Prabhu Dayal had unlawfully withheld Bhardwaj's passport. LAS completely ignores the numerous scandalous allegations, including the charge of sexual harassment, cited in Point III above which were included in the Original Complaint, widely publicized and then promptly omitted from the Amended Complaint. The language quoted at the top of this page from the Savage case is perfectly applicable to the instant action.

In conclusion, LAS then devotes almost two and one-half pages to an alleged failure of the Counterclaims to allege the "Requisite Actual Malice." The crux of this argument is that:

> "Whether Ms. Pfitsch and LAS acted with actual malice must be judged according to their subjective state of mind – not according to a 'reasonable' person standard."

---

[5]  LAS cites four other reported decisions, none of which are applicable to the instant action. Fuji Photo Film U.S.A., Inc. v. McNulty, 669 F.Supp.2d 405, 411 (S.D.N.Y. 2009), expressly cites the Court of Appeals decision in Williams v. Williams (that is discussed above at pp.4-7) noting that the Section 74 privilege does not apply to the circulation to the press of false and defamatory charges in a pleading. The three other reported cases cited by LAS dealt with fair and true reports of judicial proceedings that did not fall within the Williams exception.

LAS Memorandum of Law, at p. 12.

LAS argues that the actual malice standard is applicable because Prabhu Dayal should be regarded as "indisputably a public official." Id. LAS does not cite a single case holding that a diplomat, or a Consul General, is a "public figure" for the purpose of adjudicating a defamation claim. LAS cites two cases in purported support of the argument that Prabhu Dayal should be considered a "public figure" for the purposes of the instant motions. The public figure plaintiff in Desai v. Hersh, 719 F.Supp. 670 (N.D.Ill. 1989), had "served India as a judge, state official, member of Parliament, cabinet member, finance minister, deputy prime minister and prime minister." 719 F.Supp. at 671. LAS also cites Ariel Sharon who was the plaintiff in the case captioned Sharon v. Time, Inc., 599 F.Supp. 538 (S.D.N.Y. 1984). It is respectfully submitted that Prabhu Dayal is not a public figure but rather a civil servant, and should not be considered to hold a position commensurate with that of the Prime Minister of India or Ariel Sharon. In any event, as discussed throughout this memorandum, the Counterclaim Defendants plainly acted with actual malice.

The Counterclaim Defendants do not, and cannot, cite a single case in which a person or entity was ever able to escape liability for filing a complaint containing dozens of outrageous and erroneous allegations, and publicizing those allegations throughout the world, and then – in a plain admission of guilt – voluntarily withdrawing those salacious allegations.

## VI

## THE MEMORANDUM OF LAW SUBMITTED BY LAS
## INCLUDES BLATANTLY FALSE STATEMENTS

LAS relegates to a footnote blatantly false statements on a fundamental issue.

LAS, on behalf of Bhardwaj, states the following:

> "Defendant also improperly bases his counterclaims on <u>statements
> neither made by or attributed to Ms. Bhardwaj</u>, but *by the media*,
> summarizing, paraphrasing, or directly quoting the original
> Complaint. *See* Sec. Am. Ans. ¶¶ 166, 168, 170, 171, 172, 173,
> 175, 182. These statements are not properly the subject of a
> defamation claim against Ms. Bhardwaj because Ms. Bhardwaj is
> not the 'publisher' of the statements." (emphasis added; italics in
> original)

Memorandum of Law in Support of Plaintiff's Motion to Dismiss and for Summary Judgment

Dismissing Counterclaims, at p. 5 n.4.

Every single one of the above-noted paragraphs ("*See* Sec. Am. Ans. ¶¶ 166, 168,

170, 171, 172, 173, 175, 182.") did in fact contain a statement quoted from Bhardwaj and/or

quoted from a statement issued by LAS on behalf of Bhardwaj and/or from a statement by

Pfitsch.

In particular, paragraph 173 consisted of the following allegations:

> ¶ 173: "The maid [ie. Bhardwaj] further alleged her 'boss' of
> confiscating her documents i.e. passport and other legal documents
> etc, while Dayal also forced her to sleep at his place, inside a closet
> in a storage. The maid also maintains her stance that her boss used
> to make sexual advances towards her. <u>Meanwhile, Santosh who is
> 45 years of age and has four children to take care of, said she filed
> the complaint through a firm representing her, the 'Legal Aid
> Society.'</u> Santosh is not only determined to have her passport back
> at the earliest, she is also demanding her former employer the [sic]
> money for the 'extra' labor she did. She said Dayal also owed her
> charges for all the injustice the poor woman suffered at his hands.
> ... She said that while being lured to the United States, she was
> promised to receive $10 per hour as salary, plus overtime; later she
> was forced to work for less than $1 per hour. A body 'massage'

would earn her some extra money, further alleged the maid though she never agreed to the 'offer' to which she described as sexual advancement. At this point, she was forced to leave the place; without her passport that was allegedly confiscated from her already." (emphasis added).

The allegation quoted in paragraph 173 is particularly noteworthy because it refers to Bhardwaj, by her first name Santosh, as having stated that she is 45 years of age and has four children to take care of, and said that she filed a complaint through LAS. Neither the Original Complaint nor the Amended Complaint nor the LAS press release ever stated that Bhardwaj was 45 years old and had four children. The Declaration of Santosh Bhardwaj, dated March 7, 2012, states, at paragraph 3, that: "I did not speak to any reporters about this case on, before, or after June 20, 2011." The statement quoted in paragraph 173 is completely in opposition to that sworn assertion. Depositions of Bhardwaj and LAS are essential to address that discrepancy. Discovery is also necessary to determine what else Bhardwaj stated to reporters with respect to Prabhu Dayal and his wife and daughter.

The filing of a false declaration would constitute perjury in violation of 18 U.S.C. § 1621(2), which provides that:

> "Whoever- ... (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury and shall, except as expressly provided by law, be fined under this title or imprisoned not more than five years or both. This section is applicable whether the statement or subscription is made within or without the United States."

Pfitsch has also submitted a carefully worded affidavit. Paragraph 2 of that affidavit states in full: "I had no communications with the press concerning anything related to this action before the Complaint was filed." (emphasis added). Nothing whatsoever is stated as to what Pfitsch and LAS did after the Initial Complaint was filed to generate worldwide publicity

concerning the scandalous allegations that were then voluntarily withdrawn less than nine weeks thereafter. Merely by way of example, paragraph 182 of the First Amended Counterclaims quoted a report issued by India Abroad including the following statement:

> ¶ 182: "[Bhardwaj] claimed she left soon after Dayal asked her to massage his legs, a request she saw as sexually inappropriate. … 'Coming from her Indian culture and background she felt it to be shocking and offensive that a married man can request a married woman for any type of physical contact. <u>She immediately left the room, completely scared,' Hollis Pfitsch, Bhardwaj's attorney, told India Abroad.</u>" (emphasis added).

The allegations quoted in paragraph 182 establish that Pfitsch spoke with India Abroad and made a statement that Bhardwaj was "completely scared." That allegation did not appear in the original Complaint, the Amended Complaint or the LAS issued written statement.

Questions of fact exist as to the extent and nature of communications by Bhardwaj, Pfitsch and LAS after the Initial Complaint was filed. Those questions of fact absolutely preclude any suggestion that summary judgment could properly be granted as to the Counterclaims.

## CONCLUSION

Bhardwaj and LAS and Pfitsch, and the counsel now representing them, never forthrightly address their scam of trying to extort an unjust settlement payment by filing outrageous allegations, including a provably false allegation of illegal conduct, and utilizing that to generate worldwide publicity, and then conclusively acknowledging the frivolity of those allegations by voluntarily omitting them in a quickly filed amended complaint. Such egregious conduct can never be countenanced.

For all of the reasons stated above, the Counterclaim Defendants' motions, both to dismiss and for summary judgment, must be denied in their entirety.

Dated: New York, New York
       March 22, 2012

ROBINSON BROG LENWAND GREENE
GENOVESE & GLUCK P.C.

By: _____
    David C. Burger (DB-8666)
875 Third Avenue
New York, New York 10022
(212) 603-6300
Attorneys for Defendants and
Counterclaim Plaintiff