UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SANTOSH BHARDWAJ,

          Plaintiff,

- *against* -

PRABHU DAYAL, CHANDINI DAYAL and AKANSHA DAYAL,

          Defendants.

---

PRABHU DAYAL,

         Counterclaim-Plaintiff,

- *against* -

SANTOSH BHARDWAJ,

         Counterclaim-Defendant,

-and-

HOLLIS PFITSCH and
THE LEGAL AID SOCIETY,

    Additional Defendants on Counterclaims.

---

No. 11 Civ. 4170 (AKH)

## MEMORANDUM OF LAW OF HOLLIS PFITSCH AND THE LEGAL AID SOCIETY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS AND FOR SUMMARY JUDGMENT DISMISSING COUNTERCLAIMS

              CAHILL GORDON & REINDEL LLP
              Eighty Pine Street
              New York, NY 10005
              (212) 701-3000

              Attorneys for Additional
              Defendants on Counterclaims
              Hollis Pfitsch and the Legal Aid
              Society

Of Counsel:

Floyd Abrams
David G. Januszewski

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

I. Section 74 Requires Dismissal of the Counterclaims..........................................................2

    A. Section 74 Is Applicable to the Statements at Issue.....................................................2

    B. Dayal's Efforts to Avoid the Imposition of Section 74 are Unavailing .........................3

II. Dayal's Defamation Claims are Fatally Deficient Because He Fails to Allege Actual Malice .............................................................................................................................8

    A. Dayal is a Public Official Subject to the Actual Malice Pleading Requirement ........................................................................................................................8

    B. Dayal has Failed to Allege Actual Malice...................................................................10

CONCLUSION..............................................................................................................................12

# TABLE OF AUTHORITIES

## Cases

*Albert* v. *Loksen*, 239 F.3d 256 (2d Cir. 2001) .................................................................. 8

*Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009) ........................................................................ 11

*Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007) ..................................................... 11

*Block* v. *First Blood Assocs.*, 691 F. Supp. 685 (S.D.N.Y. 1988) ..................................... 8n

*Branca* v. *Mayesh*, 476 N.Y.S.2d 187 (2d Dep't 1984) ................................................. 1, 4

*Bridge C.A.T. Scan Assocs.* v. *Ohio-Nuclear Inc.*, 608 F. Supp. 1187 (S.D.N.Y. 1985) ....... 6, 7, 8

*Church of Scientology Int'l* v. *Behar*, 238 F.3d 168 (2d Cir. 2001) ................................... 8

*Davis* v. *Costa-Gavras*, 1984 WL 1068 (S.D.N.Y. Oct. 22, 1984) ...................................... 9

*DeCarvalho* v. *daSilva*, 414 A.2d 806 (R.I. 1980) ........................................................... 9

*Desai* v. *Hersh*, 719 F. Supp. 670 (N.D. Ill. 1989) ........................................................... 9

*Egiazaryan* v. *Zalmayev*, 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) ........................... 4, 8

*Fishof* v. *Abady*, 720 N.Y.S.2d 505 (1st Dep't 2001) ..................................................... 7n

*Fuji Photo Film U.S.A., Inc.* v. *McNulty*, 669 F. Supp. 2d 405 (S.D.N.Y. 2009) ......... 1, 2, 3, 4

*Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323 (1974) .......................................................... 10

*Kolchinsky* v. *Moody's Corp.*, 2012 WL 639162 (S.D.N.Y. Feb. 28, 2012) ........................ 8

*Mosesson* v. *Jacob D. Fuchsberg Law Firm*, 683 N.Y.S.2d 88 (1st Dep't 1999) ............. 3

*Seltzer* v. *Fields*, 244 N.Y.S.2d 792 (1st Dep't 1963) ..................................................... 3

*Sharon* v. *Time, Inc.*, 599 F. Supp. 538 (S.D.N.Y. 1984) ................................................. 9

*Soumayah* v. *Minnelli*, 797 N.Y.S.2d 287 (1st Dep't 2005) ............................................ 4

*St. Amant* v. *Thompson*, 390 U.S. 727 (1968) ............................................................ 8, 10

*The Savage is Loose Co.* v. *United Artists Theatre Circuit, Inc.*, 413 F. Supp. 555 (S.D.N.Y. 1976) .......................................................................................................... 3, 5

*Ulrich* v. *Hausfeld*, 704 N.Y.S.2d 495 (2d Dep't 2000) .................................................... 4

*Williams* v. *Williams*, 298 N.Y.S.2d 473 (1969) .................................................................. 1, 4, 5, 6

## **Rules**

Fed. R. Civ. P.
12(b)(6) ............................................................................................................................. 8

S.D.N.Y. Loc. R.
56.1 ................................................................................................................................ 5, 10

56.1(b) ................................................................................................................................ 10

56.1(c) ............................................................................................................................ 5, 10

## **Statutes**

N.Y. Civ. Rights Law § 74 (McKinney 2009) ................................................ 1, 2, 3, 3n, 4, 5, 7n, 8

Additional Defendants on Counterclaims, Hollis Pfitsch ("Pfitsch") and The Legal Aid Society ("LAS"), submit this memorandum of law in reply to Counterclaim Plaintiff Prabhu Dayal's ("Dayal") memorandum of law in opposition to Pfitsch and LAS's motion to dismiss and motion for summary judgment on Dayal's Counterclaims ("D. Mem.").

## PRELIMINARY STATEMENT

In his memorandum, Dayal seeks in vain to remedy the fatal shortcomings of his Counterclaims. As regards Section 74 of the New York Civil Rights Law, he does not maintain that the press release provided to the press after the filing of the Complaint was anything but a "fair" summary of what the Complaint itself alleged. Nor does he maintain that the press release was anything but a response to an inquiry from the press.

What he does say is at war with the core of Section 74 itself. He claims that statements to the press of allegations in a complaint or even statements in a complaint itself may be actionable so long as they are false. There is no support at all for such a reading of Section 74. In fact, any such reading would subvert the whole point of the privilege. He also claims that Section 74 should not apply because the Complaint was amended in a manner that deleted certain allegedly defamatory claims, another assertion which finds no support at all in the law.

There is, to be sure, a judicially articulated exception to Section 74 which deprives a movant of its protections if the sole purpose of an assertion in a complaint is to use it to defame a party. See Williams v. Williams, 298 N.Y.S.2d 473 (1969). But that exception is only available if, quite literally, such an intent is pleaded as the "sole" purpose of the litigation. See Branca v. Mayesh, 476 N.Y.S.2d 187, 189 (2d Dep't 1984); Fuji Photo Film U.S.A., Inc. v. McNulty, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009). Dayal's Counterclaims, however, plead just the opposite, claiming that the underlying lawsuit was designed to "create a false claim for

damages and permit Bhardwaj to remain in the United States." (Counterclaims ¶¶ 209, 212). Thus, Dayal's own pleadings demonstrate that the exception is inapplicable. And even if Dayal could ignore what he has already acknowledged, as he seeks to do in his memorandum, case law demonstrates there is no basis to avoid the terms of Section 74 and the dismissal that that provision requires.

As for Dayal's failure to plead actual malice, he does not dispute, as he could not, that he did not so plead. Instead, he offers only the legally incorrect proposition that the fact of the amendment to the Complaint demonstrates actual malice—which, as a matter of law, it does not. On this basis as well, the case should be dismissed.

## ARGUMENT

### I. Section 74 Requires Dismissal of the Counterclaims

#### A. Section 74 Is Applicable to the Statements at Issue

Dayal's memorandum is an exercise in misdirection. Much ink is spilled hurling accusations of perjury and professional misconduct, and nearly one-third of the brief is devoted to seeking to establish defamation per se—which is entirely irrelevant to this motion. The point of the motion is that whether or not the challenged statements were defamatory, the Counterclaims must be dismissed as a matter of law. Another section is devoted to establishing "malice," as if such a showing would make Section 74 inapplicable. But the Section 74 privilege is "not defeated by allegations of malice or bad faith." Fuji Photo Film U.S.A., Inc. 669 F. Supp. 2d at 411.

Dayal does not dispute that all statements made in the Original Complaint are pertinent to the litigation. Thus, any defamation claims he makes against statements contained in

the pleadings themselves are barred by common law absolute privilege and must be dismissed. See Mosesson v. Jacob D. Fuchsberg Law Firm, 683 N.Y.S.2d 88, 89 (1st Dep't 1999).

Nor does Dayal dispute that all the challenged statements made to the press were substantially accurate descriptions of what was alleged in the operative Complaint at the time the statements were made[1] and, thus, were fair reports of the proceedings when made. See N.Y. Civ. Rights Law § 74; Fuji Photo Film U.S.A., Inc., 669 F. Supp. 2d at 411. And Dayal does not challenge Pfitsch and LAS's assertion that the alleged defamatory material "'may possibly bear on the issues in litigation'" and are thus protected under Section 74. The Savage is Loose Co. v. United Artists Theatre Circuit, Inc., 413 F. Supp. 555, 561 (S.D.N.Y. 1976) ("Savage") (quoting Seltzer v. Fields, 244 N.Y.S.2d 792, 795-96 (1st Dep't 1963)). Accordingly, Dayal effectively concedes that all statements made by LAS and Pfitsch to the press are protected by the Section 74 privilege unless some exception to the privilege applies. See id.

**B.    Dayal's Efforts to Avoid the Imposition of Section 74 are Unavailing**

Dayal argues that reports to the press of allegations in a complaint or the statements in the complaint itself are not protected by the Section 74 privilege if the complaint's allegations are false. This appears to be his underlying argument when he maintains that Indian law permitted Dayal to take possession of Bhardwaj's passport when she was in the United States. Notwithstanding this conflict of laws question, for the purposes of the Section 74 privilege, there is and could be no legal authority that the mere falsity of an allegation in the

---

[1] Dayal also does not dispute that neither Pfitsch nor LAS made any statements to the press about this lawsuit until after the Original Complaint was filed. Thus, Dayal concedes, as a matter of timing, that the Section 74 privilege attaches to all allegedly defamatory statements made to the press by LAS and Pfitsch. Dayal contends in passing that depositions are necessary, but not on this issue. (D. Mem. at p. 22). Rather, he claims there are questions of fact with respect to communications *after* the Complaint was filed. Id. Any request by Dayal for such depositions should be denied because they do not bear on the applicability of the privilege.

complaint nullifies the privilege. Such a rule would subvert the whole point of the privilege. Under such a rule, any lawyer filing a pleading could be sued for defamation, and every lawsuit could potentially become two.

The only exception to Section 74 relied upon by Dayal arises out of Williams v. Williams, 298 N.Y.S.2d 473 (1969), a case in which the court held that Section 74 provides no defense when, as an "ingenious means of defamation," litigation is commenced seeking the benefit of Section 74 to immunize defamatory statements. Id. at 479. This Court has recently emphasized that the Williams exception is "narrow" and available only where it is alleged that a claim "was brought maliciously and *solely* for the purpose of later defaming the plaintiff." Fuji Photo Film U.S.A., Inc., 669 F. Supp. 2d at 412 (emphasis added) (citation and internal quotation marks omitted); Egiazaryan v. Zalmayev, 2011 WL 6097136, at *9 (S.D.N.Y. Dec. 7, 2011) (same); Branca v. Mayesh, 476 N.Y.S.2d 187, 189 (2d Dep't 1984) (same); see also Soumayah v. Minnelli, 797 N.Y.S.2d 287, 288 (1st Dep't 2005) (the Williams exception is recognized only when a complaint is filed "solely as a vehicle and occasion to disseminate false and defamatory matter"); Ulrich v. Hausfeld, 704 N.Y.S.2d 495 (2d Dep't 2000) (the Williams exception applies when "the judicial proceeding was brought solely for the purpose of disseminating the alleged defamation").

At the outset, then, it is clear that Dayal failed to meet the threshold pleading requirements for application of the Williams exception. Nowhere in his Counterclaims does Dayal allege that LAS and Pfitsch filed the lawsuit solely for the purpose of later defaming him. In fact, he pleads the opposite—that it was brought to "create a false claim for damages and permit Bhardwaj to remain in the United States." (Counterclaims ¶¶ 209, 212). On that basis alone, the Counterclaims must be dismissed.

Although Dayal makes numerous efforts to avoid this conclusion, there is no basis for doing so. In fact, the facts of this case are similar to ones in which Williams has been held to be inapplicable. Dayal's memorandum misleadingly asserts that Savage held the Williams exception to apply in that case. (D. Mem. at p. 18). Dayal quotes a portion from the Savage opinion which restates the Williams exception, but omits the remainder of the paragraph where the Savage court goes on to explain why the Williams exception should not apply in that case, which had strikingly similar facts to the case now at bar. In upholding the Section 74 privilege, the Savage court noted that:

> the plaintiffs' uncontroverted affidavit establishes that the plaintiffs did not seek out Variety [magazine] for the purpose of publicizing the allegations of the complaint. Rather, a Variety employee assigned to cover the United States District Court for the Southern District of New York noticed the filing of the complaint and informed a Variety reporter. The reporter, who obtained a copy of the complaint, contacted an attorney for the plaintiffs, whose remarks, judging by the content of the article, were confined to repeating the substance of the complaint.

The Savage is Loose Co., 413 F. Supp. at 561.

The uncontroverted affidavits of Pfitsch and Patricia Bath, which were submitted to this Court with the motion to dismiss and motion for summary judgment and are the basis of The Statement of Hollis Pfitsch and The Legal Aid Society Pursuant to Local Rule 56.1 ("Local Rule 56.1 Statement")—to which Dayal offered no response, thus admitting its contents under Local Rule 56.1(c)—unambiguously demonstrate that Scott Shifrel of the New York Daily News was the first member of the press with whom Pfitsch and LAS had contact regarding this case. This occurred after Shifrel noticed the filing of Bhardwaj's Complaint and contacted LAS. (See Pfitsch Aff.; Bath Aff.). Further mirroring the facts of Savage, it is undisputed that the statements of Pfitsch and LAS were confined to repeating the substance of the filed Complaint. Dayal has not cited a case, and we are aware of none, that applied the Williams exception when

-5-

it was undisputed, as here, that it was the press that first contacted the litigant after coming upon the complaint.

Dayal refers to cases in which courts have applied the Williams exception. However, the egregious facts in these cases, which the courts found to meet the narrow standard of the Williams exception, are poles apart from the facts in this case. Dayal misleadingly discusses Bridge C.A.T. Scan Associates v. Ohio-Nuclear Inc., 608 F. Supp. 1187 (S.D.N.Y. 1985) by passing over the egregious facts in Bridge which gave rise to its application of the Williams exception and which are radically distinguishable from this case.

Bridge began with a contractual dispute arising out of a history of misdealing by the eventual defamation defendant. Bridge C.A.T. Scan Assocs., 608 F. Supp. at 1189. The defamation defendant ("Bridge") purchased a C.A.T. scan machine from Technicare that it subsequently leased to a third party. Id. Bridge, while receiving lease payments from the satisfied third-party lessee, claimed that the machine did not function properly and refused to pay Technicare. Id. Bridge's executives made oral threats to Technicare executives on at least three occasions, the substance of which were that Bridge would launch a "'public relations campaign'" if Technicare did not resolve the dispute. Id. Bridge threatened to do this by "utilizing the services of an advertising agency, purchasing advertising space in The Wall Street Journal and other trade publications, and taking whatever steps were necessary to publicize the alleged shortcomings of Technicare's equipment." Id. at 1190. Bridge then sent a letter to Technicare amplifying these threats and stating "that if the contractual dispute was not resolved, Bridge was prepared to proceed "'legally, publicly, and otherwise.'" Id. Bridge added: "'if we must do battle we will proceed on a grander scale than Technicare can envision. . . . [w]e will not stop with public disclosure of our findings, but will institute a class action suite [sic] forthwith.'" Id.

This case that Dayal relies so heavily upon also observes that "Bridge's counsel sent a letter to Technicare customers [prior to a class being certified] informing them of the pending suit" which noted the "'opportunity'" for those customers to recover "'substantial damages'" as a result of receiving a Technicare product with design defects. Id. at 1190, 1197-98. Bridge then dismissed its class action complaint and reinstituted its action on an individual basis. Id. at 1196. Dayal asserts that the withdrawal of the first class action suit "was specifically found to be a question of fact defeating summary judgment," but no such statement is to be found in the court's opinion. (D. Mem. at p. 5). Bridge simply does not hold that the amendment of a complaint triggers an issue of malice sufficient to defeat a motion for summary judgment.

In fact, in his memorandum, Dayal does not set forth any of the relevant facts from Bridge or any basis for its application here. Dayal does not and cannot allege that Bhardwaj made any threats, through LAS or otherwise, to do battle with Dayal legally, publicly, or otherwise if he did not resolve the dispute. He does not and cannot allege that he had contact with Bhardwaj or LAS between the time that Bhardwaj left his employment and when the Original Complaint was filed. Nor did Bhardwaj utilize the services of an advertising agency or purchase advertising space anywhere. In contrast to Bridge, the facts before the Court here are indisputable—and undisputed—that the press first took notice of the case against Dayal because they came upon the filed Complaint and already had a copy. (See Pfitsch Aff.).[2] Nor is there any evidence that LAS was confronted with any factual information before filing the lawsuit that

---

[2] More recent court decisions demonstrate that the distribution of copies of a filed complaint to the press is protected by the absolute privilege of Section 74. See Fishof v. Abady, 720 N.Y.S.2d 505 (1st Dep't 2001) (holding that the Section 74 privilege applied where an attorney held a press conference and distributed copies of the complaint to members of the media).

any of Bhardwaj's underlying claims were demonstrably false, as was the case in Bridge.[3] There is no basis for Dayal to avoid the dispositive impact of Section 74 in this case.

## II. Dayal's Defamation Claims are Fatally Deficient Because He Fails to Allege Actual Malice

Dayal's defamation claims are fatally deficient and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to allege actual malice. On a motion to dismiss, allegations that are merely conclusory are not entitled to a presumption of the truth. See Egiazaryan, 2011 WL 6097136, at *3. "[A] complaint [or counterclaim] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (citation and internal quotations omitted). In order to avoid dismissal, "[w]here the plaintiff is a public figure, a complaint must allege that the defendant made the defamatory statement with actual malice." Kolchinsky v. Moody's Corp., 2012 WL 639162, at *4 (S.D.N.Y. Feb. 28, 2012).

### A. Dayal is a Public Official Subject to the Actual Malice Pleading Requirement

As a public official, Dayal is required to allege both the falsity of the challenged statements and that they were made with actual malice, that is, with knowledge that they were false or with serious doubts as to the truth of their publication on the part of Pfitsch and LAS. St. Amant v. Thompson, 390 U.S. 727, 728, 731 (1968); See Church of Scientology Int'l v. Behar, 238 F.3d 168, 174 (2d Cir. 2001) (same); Albert v. Loksen, 239 F.3d 256, 272 (2d Cir. 2001) (same). Dayal does not dispute that the Counterclaims failed to plead actual malice, or anything

---

[3] Dayal's reliance on Block v. First Blood Assocs., 691 F. Supp. 685 (S.D.N.Y. 1988) is no more persuasive. There, the defamation defendant allegedly circulated a draft complaint before commencing the lawsuit and threatened to file the complaint in a design to "engender publicity that would lead the investing public to believe that anyone who invests with [defamation plaintiff] would never receive a return on their investment." Id. at 700. Further, in Block, the defamation defendant contacted a reporter and repeated an allegation that was contained in the draft complaint but not included in the complaint as filed. See id. at 690.

like it. Rather, in an attempt to remedy this fatal omission, Dayal claims in his memorandum that he is merely a "civil servant" not a public official, and therefore not required to plead actual malice. (D. Mem. at p. 19). Dayal asserts that "LAS does not cite a single case holding that a diplomat, or a Consul General, is a 'public figure' for the purpose of adjudicating a defamation claim" to prove that he is merely a "civil servant." (Id.). In DeCarvalho v. daSilva, 414 A.2d 806 (R.I. 1980), just such a holding was issued, determining that plaintiff, who served as Portuguese Consul and Honorary Consul in the state of Rhode Island, was a public figure and thus required to prove actual malice. Similarly, this court in Davis v. Costa-Gavras, 1984 WL 1068, at *5 (S.D.N.Y. Oct. 22, 1984), held that a United States Consul to the Santiago Consulate was a public official required to prove actual malice.

In any event, as the affidavit submitted by the Indian Government to this Court in Dayal's prior motion to dismiss (now annexed as Ex. G to the Aff. of Floyd Abrams filed with Counterclaim Defendants' Memorandum) demonstrates, "Dayal is one of the senior-most diplomats of the Indian Foreign Service . . . [who] previously served as Ambassador to Kuwait (September 1998 to December 2001) and Morocco (July 2004 to August 2008)[,] . . . is of the rank of Secretary to the Government of India, the highest position in the Indian bureaucracy[,] . . . [and] is an official representative and agent of the Government of India." That being so, Dayal plainly holds a position very much commensurate with a "political official of [India]" (see Desai v. Hersh, 719 F. Supp. 670, 673 (N.D. Ill. 1989)) and "a minister of a foreign government" (see Sharon v. Time, Inc., 599 F. Supp. 538, 563 (S.D.N.Y. 1984)). (Counterclaim Defendants' Memorandum at p. 13).

Dayal also fails to address—let alone refute—the myriad of examples presented by Counterclaim Defendants in their motion to dismiss that depict his easy and quite frequent

-9-

"access to the channels of effective communication." See Gertz v. Robert Welch Inc., 418 U.S. 323, 344 (1974); (Counterclaim Defendants' Memorandum at pp. 13-14). Under the requirements set forth by the Supreme Court, "public figures" are distinguishable from "private figures" because they "enjoy significantly greater access to the channels of effective communication . . . than private individuals normally enjoy." Id. Although Dayal now claims to be a mere "civil servant," he does not attempt to refute the facts—nor can he since they are now deemed admitted under Local Rule 56.1(c) because he failed to submit a statement under Local Rule 56.1(b)—that he (a) spoke to the domestic and foreign media seeking to refute Ms. Bhardwaj's allegations (see Local Rule 56.1 Statement ¶ 16), (b) used his status to request the assistance of Secretaries Napolitano and Clinton and Attorney General Holder (see Local Rule 56.1 Statement ¶ 18), and (c) attended a rally in his own support at City Hall (see Local Rule 56.1 Statement ¶ 20). This access to the media to have an "opportunity to counteract false statements" is exactly what the Supreme Court in Gertz concluded justified the heightened burden of pleading actual malice. Id. at 344.

### B. Dayal has Failed to Allege Actual Malice

In a feeble attempt to claim that he has satisfactorily pled actual malice if so required, Dayal asserts "[i]n any event, as discussed throughout this memorandum, the Counterclaim Defendants plainly acted with actual malice." (D. Mem. at p. 19). However, Dayal does not point to a single allegation in the Counterclaims that LAS and Pfitsch made the statements at issue with knowledge that they were false or with serious doubts as to the truth of their publication in satisfaction of the actual malice standard. See St. Amant, 390 U.S. at 728, 731. According to the allegations in the Counterclaims, the statements at issue were "completely false, unfounded and outrageous" (Counterclaims ¶ 206), but Dayal did not even refer to Pfitsch

-10-

or LAS's subjective state of mind. Dayal's allegation simply does not address, let alone satisfy, the actual malice standard.

Dayal again attempts to remedy the deficiencies of his pleadings through his memorandum by alleging that "[t]he knowing and intentional falsity of many allegations in the Original Complaint is conclusively established by the simple fact that those allegations were voluntarily withdrawn by the Counterclaim Defendants even before any responsive papers were filed." (D. Mem. at p. 14). The only thing withdrawal of those allegations establishes is that plaintiff's counsel believed a claim for relief was stated without having to prove those allegations. But even if one were to jettison logic and leap to the conclusion that mere withdrawal of the allegations somehow conclusively establishes they were false, rather than non-essential, Dayal does not even attempt to describe how amending a complaint, *which he himself also did in this case*, "conclusively established" that LAS and Pfitsch knew the allegations in the Original Complaint were false, or that they entertained serious doubts that the Complaint and their statements to the press were true. Dayal's allegations, if accepted as true, must "state a claim to relief that is plausible on its face," not just possible or "conceivable," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Here, LAS and Pfitsch, acting as advocates for their client, amended the Complaint by deleting allegations that were not essential to prove. This contributed to judicial efficiency and better positioned their client for a favorable outcome. Doing so does not begin to establish actual malice.

## CONCLUSION

We cannot conclude this brief without observing that the very notion of subjecting counsel, let alone distinguished pro bono counsel such as the Counterclaim Defendants here, to claims such as have been made here, is deeply troubling. The societal need to provide representation that is both competent and zealous to impecunious plaintiffs such as Santosh Bhardwaj grows by the year. Organizations such as The Legal Aid Society and attorneys such as Hollis Pfitsch receive little enough gratitude for dedicating themselves to representing those who cannot pay for their own representation. They serve this community and all its people with distinction. Were these claims not made by a high ranking official of a friendly nation, we would consider seeking costs. That we do not do so is solely for that reason.

The Counterclaims should be dismissed.

Dated:  New York, New York
        March 29, 2012

CAHILL GORDON & REINDEL LLP

By:  /s/ Floyd Abrams

Floyd Abrams
David G. Januszewski
Eighty Pine Street
New York, NY 10005
(212) 701-3000

Attorneys for Additional
Defendants on Counterclaims
Hollis Pfitsch and The Legal Aid
Society