```
     C5VHBHAC

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   SANTOSH BHARDWAJ,

 4                Plaintiff,              New York, N.Y.

 5          v.                            11 Civ. 4170 (AKH)

 6   PRABHU DAYAL, et al.,

 7                Defendants.

 8   ------------------------------x

 9                                        May 31, 2012
                                          2:30 p.m.
10
     Before:
11
                     HON. ALVIN K. HELLERSTEIN,
12
                                          District Judge
13
                              APPEARANCES
14
     THE LEGAL AID SOCIETY
15        Attorneys for Plaintiff
     BY:  KAREN CACACE
16        HOLLIS PFITSCH

17   OUTTEN & GOLDEN, LLP
          Attorneys for Plaintiff
18   BY:  ADAM T. KLEIN

19   ROBINSON BROG
          Attorneys for Defendants
20   BY:  DAVID C. BURGER

21   CAHILL GORDON & REINDEL, LLP
          Attorneys for Counterclaim Defendants The Legal Aid
22        Society and Hollis Pfitsch
     BY:  FLOYD ABRAMS
23        DAVID G. JANUSZEWSKI

24

25
```

C5VHBHAC

1              (In open court)
2              THE DEPUTY CLERK:  Bhardwaj v. Dayal.
3              Counsel, please state your name for the record.
4    Counsel.
5              MR. ABRAMS:  FLoyd Abrams for counterclaim defendants
6    Legal Aid Society and Hollis Pfitsch.
7              MR. JANUSZEWSKI:  David Januszewski, from Cahill
8    Gordon, also for the same parties.
9              THE COURT:  Why don't you give the introductions for
10   the whole group.  You do the next two.
11             MS. CACACE:  I will do the rest, your Honor.  Karen
12   Cacace and Hollis Pfitsch from the Legal Aid Society for the
13   plaintiff, and Adam Klein.
14             THE COURT:  I know three of the people in the first
15   row.  Mr. Abrams and I have been friends for a long time,
16   though we have not entertained each other in any other than a
17   professional way.  Mr. Januszewski is a noted and illustrious
18   and victorious litigator in my court.  I even found out how to
19   pronounce his name after a long time.
20             MR. JANUSZEWSKI:  Thank you, your Honor.
21             THE COURT:  And Mr. Klein I have known on the
22   Ansoumana case, which was litigated a couple of years ago, and
23   I think another case as well.
24             MR. BURGER:  And David Burger, of Robinson Brog, for
25   the counterclaim plaintiffs.

1            THE COURT:  OK.  I would like to first discuss the
2     motion by Akansha Dayal to dismiss the complaint.
3            So, Mr. Burger, I have looked at the complaints and I
4     don't find a specific allegation against Ms. Akansha Dayal, the
5     daughter of Prabhu and Chandini Dayal.  Isn't that fatal?
6            MR. BURGER:  I believe so, your Honor.
7            THE COURT:  You would like to have the motion
8     dismissed, right?  You would like to have the complaint against
9     her dismissed.
10           MR. BURGER:  Yes, absolutely.
11           THE COURT:  So who is going to argue that point?
12           MS. PFITSCH:  I am, your Honor.
13           THE COURT:  Yes.
14           MS. PFITSCH:  So actually, your Honor, in paragraphs
15    45 and 46 we have alleged that all three defendants -- so both
16    Prabhu Dayal, Chandini Dayal, and Akansha Dayal -- have the
17    power to supervise Ms. Bhardwaj.
18           THE COURT:  Where is this?
19           MS. PFITSCH:  Paragraph 45.
20           THE COURT:  How old is she?  How old is she,
21    Mr. Burger?
22           MR. BURGER:  Pardon?
23           THE COURT:  How old is she?
24           MR. BURGER:  She is in her 20s.
25           THE COURT:  Thanks.

1           Go ahead.

2           MS. PFITSCH:  Again in paragraph 46 we allege that all
3   three defendants have the power to control Ms. Bhardwaj's
4   conditions.

5           THE COURT:  I need to look at the first amendment in
6   the complaint.

7           MS. PFITSCH:  I'm sorry.  It is 46 and 47.  It looks
8   like I am --

9           THE COURT:  At all relevant times in this action, all
10  defendants had the power to supervise Ms. Bhardwaj.  At all
11  relevant times to this action all defendants had the power to
12  control Ms. Bhardwaj's work conditions in the house.  So those
13  are not sufficient.  Those are not sufficient to bring in a
14  defendant to the kinds of allegations that you have made.

15          MS. PFITSCH:  I believe it is, your Honor.

16          THE COURT:  It is not.

17          MS. PFITSCH:  Can I also just point out, the previous
18  paragraphs are specific to Mr. Prabhu Dayal and Ms. Chandini
19  Dayal.

20          THE COURT:  I am not talking about them.  I am talking
21  about Akansha.

22          MS. PFITSCH:  So then in paragraphs 46 and 47 it
23  includes all three.  We didn't repeat their names again in each
24  of those paragraphs, but they are specific to her.

25          Under the broad standards of the employment law, power

1   to supervise and power to control conditions are sufficient to
2   be an employer.
3           THE COURT:  I won't let you do it with a conclusory
4   allegation like that.  You bring her in to rather serious.
5   Allegations.  So let me ask you.  So paragraph 68 alleges a
6   claim under the William Wilberforce Trafficking Victims
7   Protection Reauthorization Act of 2008.  Does it make any
8   difference to Akansha if the employee was from India or from
9   New York?  She was the daughter.  She is getting the benefit of
10  what her parents provide in the house.  Why is she sued?  Did
11  she have anything to do with procuring Ms. Bhardwaj?  Did she
12  have anything to do with bringing her over here?  Did she have
13  anything to do with paying her?  Did she have anything to do
14  with negotiating the terms of the contract, or any of that?
15          MS. PFITSCH:  Your Honor, under the anti-trafficking
16  laws --
17          THE COURT:  Answer the question, please.
18          MS. PFITSCH:  We have not alleged specifically and it
19  is not within Ms. Bhardwaj's knowledge whether she had anything
20  to do with setting the actual pay that was agreed upon before
21  she came here.  That would be something we would seek in
22  discovery.
23          Under the trafficking law, the statute, the standard
24  is whether the person knew or should have known about the
25  actions taken to procure the person's labor.

1             THE COURT:  What do you know about that?
2             MS. PFITSCH:  We knew that and allege that she knew
3    about the terms of Ms. Bhardwaj's recruitment.
4             THE COURT:  How do you know that?
5             MS. PFITSCH:  She lived in the household, your Honor.
6             THE COURT:  So what?
7             MS. PFITSCH:  She acknowledges in her affidavit,
8    included in the defendants' summary judgment motion, that she
9    knew about Ms. Bhardwaj's work at her parents' house.
10            THE COURT:  She knew that she worked.  She knew she
11   cleaned, she knew she occasionally made dinners.  Essentially
12   she is out of the house.  She is a 22 year old.
13            MS. PFITSCH:  Your Honor, she knew or the standard
14   also includes should have known about the system under which
15   the defendants brought the plaintiff.
16            THE COURT:  Before my kids flew the coop into
17   apartments of their own, do you think they knew what kinds of
18   pay I was paying the household help or my wife was paying the
19   household help or whether it was my wife or me who was paying
20   the household help?
21            MS. PFITSCH:  I think that is a very distinct
22   situation.  Ms. Dayal is an adult professional.
23            THE COURT:  She is 22 years old.
24            MS. PFITSCH:  I am not sure that she is 22, your
25   Honor.

1              THE COURT:  How old do you think she is?

2              MS. PFITSCH:  She works for Ernst & Young and has for

3     a number of years.

4              THE COURT:  So 26 years old.

5              MS. PFITSCH:  She is now working in London.

6              She is a professional.  She lived in the household.

7     The trafficking law includes both benefiting from the scheme

8     and if you should have known of the situation --

9              THE COURT:  Benefiting from the fact that the person

10    is being brought here against her will and kept here against

11    her will and I'm sure to Ms. Akansha Dayal there is nothing

12    more alleged.  It didn't make any difference who was cleaning

13    her room or who was feeding her food or whether it was someone

14    who was hired from the United States or hired from abroad.

15             There is no allegation.  It doesn't make a whit of

16    difference.

17             MS. PFITSCH:  The standards under both the employment

18    law and the trafficking law tend to sweep in people who

19    benefited from it, knew about the work and had the power to

20    stop it.  She should have been aware of those conditions.

21             THE COURT:  Why should she have been aware?  What

22    difference did it make in her life who it was that was cleaning

23    her room?

24             MS. PFITSCH:  Again, she is benefiting from this work.

25             THE COURT:  In the course your lawsuit it matters not

1   a bit whether she is involved or not.  If she is in the
2   lawsuit, she gets visited with the sins of her parents.  It is
3   not fair.  You were 22 at one time or 26 at one time.  Maybe
4   you still are.  I don't know.
5          Is there any allegation that she was involved?
6          MS. PFITSCH:  I believe it is fair, your Honor.
7          THE COURT:  Mr. Klein was involved when I held in in
8   Ansoumana that that was a coordinate kind of employment
9   situation, but this is not that case.
10         MS. PFITSCH:  Your Honor, it is a much more
11  micro-level.  It is a household and the adults in the household
12  who benefit and know of the work have the power to stop it.
13  She has included in her affidavit that she gave prohibition on
14  Ms. Bhardwaj's working for her.
15         THE COURT:  Prohibition, what does that mean?
16         MS. PFITSCH:  In her affidavit she outlines that
17  Ms. Bhardwaj should not do any work for her.  The Second
18  Circuit has ruled --
19         THE COURT:  What do you mean she should not do any
20  work?
21         MS. PFITSCH:  I am not sure exactly what she meant,
22  but that in her affidavit she states that she declared that
23  Ms. Bhardwaj should not do any work for her.  It wasn't clear
24  to whom she made that declaration.  That kind of prohibition on
25  someone working for you is not enough to avoid liability under

1        the Fair Labor Standards Act.
2                   THE COURT:  First you have to have it before you can
3        avoid it.
4                   I grant the motion.  You don't have any specific
5        allegations with respect to Ms. Akansha Dayal.  It is unfair to
6        sweep her in with the allegations made against her parents.
7        There is no allegation she was involved in any way in the
8        hiring or retention or the terms of employment or anything that
9        you allege that was done to the plaintiff Ms. Bhardwaj.  That
10       motion is granted.
11                  MS. PFITSCH:  If we could have leave to amend, your
12       Honor, and replead.
13                  THE COURT:  What do you know to amend?  Do you have
14       anything?
15                  MS. PFITSCH:  The kinds of things that are included in
16       Ms. Bhardwaj's affidavit.
17                  THE COURT:  I am not going to grant you leave to amend
18       because at the end of this I am going to give you 60 days to
19       make discovery.  This case was filed in 2011, somewhere in the
20       first third of the year judging from the number.  It's hung
21       around long enough in the pleading stage.  You are going to
22       discover and finish this thing in 60 days.
23                  MS. PFITSCH:  We would --
24                  THE COURT:  I am not giving you leave.
25                  MS. PFITSCH:  Thank you, your Honor.

1              THE COURT:  Now let's go to Mr. Burger.

2              How do you find malice on the claims that were alleged

3     against Mr. Prabhu Dayal and Ms. Chandini Dayal?

4              MR. BURGER:  I find malice --

5              THE COURT:  These were allegations made for a

6     recovery.  The plaintiff wanted a recovery.  The plaintiff has

7     a complete privilege to make whatever allegations are necessary

8     to state a cause of action.  The plaintiff has stated a cause

9     of action.  Merely because the Daily News prints something that

10    it finds in the court files doesn't mean that you have a libel

11    action.

12             MR. BURGER:  Your Honor, allegations were included in

13    the original complaint that were withdrawn before any

14    responsive pleading or answer or motion was filed.

15             THE COURT:  They were of an evidentiary nature.  They

16    had nothing to do with the materiality of the cause of action

17    and they have nothing to do with the essential allegations that

18    you are complaining about, and that is the virtual imprisonment

19    that is alleged against Ms. Bhardwaj.

20             MR. BURGER:  Your Honor, there were seven

21    paragraphs --

22             THE COURT:  I read them.

23             MR. BURGER:  -- dealing with sexual harassment.

24             THE COURT:  I read.  There was a desire on the part of

25    Prabhu Dayal that Ms. Bhardwaj should massage his tired legs.

1    That is what you alleged that was withdrawn.  It is unnecessary

2    for the gravamen of the cause of action.  It doesn't have to be

3    proven.  It is withdrawn.  It has nothing to do with the Daily

4    News article.

5             MR. BURGER:  Your Honor, there is a claim for forced

6    labor which is a criminal offense.  There are no allegations to

7    support that.  None.

8             THE COURT:  Yes, there are.  There are allegations

9    that she was not allowed to leave, that she was kept inside the

10   house, that her passport was taken away.  That is enough.

11            MR. BURGER:  That is not for forced labor.

12            THE COURT:  That is so.  She was made to work inside

13   the house for long hours.  I don't know if it is true or not

14   but I am accepting the allegations as true as I have to.

15            MR. BURGER:  There are allegations that the passport

16   was unlawfully withheld.

17            THE COURT:  That is right.

18            MR. BURGER:  That is false.

19            THE COURT:  Why is it false?  They allege it.  You

20   deny it.  How do I know it is false?

21            MR. BURGER:  Because they rely on a statute that says

22   it is unlawful to prevent or restrict without lawful authority

23   the person's liberty to move or travel.

24            THE COURT:  What is the authority of your client to

25   keep hold of her passport?

1              MR. BURGER:  Pardon?

2              THE COURT:  What is the authority of your client to

3     take away her passport?

4              MR. BURGER:  The authority issued by his government

5     which issued the official passport which stated that it could

6     only be used for official travel.

7              THE COURT:  Notwithstanding, what is your right to

8     take away her passport?  Are you her policeman?

9              MR. BURGER:  The --

10             THE COURT:  Are you her policeman?

11             MR. BURGER:  The Consul General is the policeman for

12    the government of India.

13             THE COURT:  She is working in the United States of

14    America and you do not have sovereign immunity.  If she is owed

15    a wage under our laws, you have got to pay it.  If she has a

16    right to travel, you have to let her travel.  You can't keep

17    her locked up.  That is the allegation.  I have to accept it.

18             MR. BURGER:  The United States government cannot

19    declare what an Indian passport can be used for.

20             THE COURT:  The motion to dismiss the counterclaims is

21    granted.  There is no allegation that these, and none could be

22    made, that these allegations could not be made to sustain a

23    cause of action in the nature of that which is alleged.  The

24    allegation is the passport was taken away, that she was forced

25    to work hours without getting fair pay, and that she had no

1    elective to leave, and that is sufficient to state the cause of
2    action.  The cause of action is stated properly.  There is a
3    privilege to state it.  It is not defamation.  The Daily News
4    picks up a story from the files of this court and publishes it
5    is not a matter of defamation.
6               MR. BURGER:  That is not this case because there were
7    communications to the press, repeated communications.
8               THE COURT:  They are not alleged and --
9               MR. BURGER:  It is alleged.
10              THE COURT:  -- and there is no allegation --
11              MR. BURGER:  There are many allegations quoting
12   newspaper reports stating that the counterclaim defendant spoke
13   with the press and made false statements, including statements
14   about illegally withholding the passport, which isn't true when
15   the passport is governed by Indian law.
16              THE COURT:  Take me through them.
17              MR. BURGER:  Pardon?
18              THE COURT:  Take me through the allegations.  Show me.
19              MR. BURGER:  If you turn to the second amended answer
20   and first amended counterclaims.
21              THE COURT:  Yes.  What paragraph?
22              MR. BURGER:  Paragraph 169.  Hollis Pfitsch said:  It
23   is expressly illegal for any employer to take a worker's
24   passport.  That is not true as to an official passport issued
25   by the Indian government solely and exclusively for travel

1    related to her official capacity.
2              THE COURT:  It is Ms. Hollis Pfitsch's opinion.  He or
3    she is free to express it.  That is the allegation in the
4    complaint.  If you are right, then you may be able to dismiss
5    the cause of action.
6              MR. BURGER:  This was in the --
7              THE COURT:  Mr. Burger.
8              MR. BURGER:  This was in the Economic Times.
9              THE COURT:  Mr. Burger, I make the rulings.  You make
10   the arguments.  Right?
11             MR. BURGER:  I am trying to, your Honor.
12             THE COURT:  My ruling is that this is a matter of
13   privilege.  This is the opinion of Hollis Pfitsch.  This
14   parrots the allegations in the complaint.  It is a privileged
15   statement.
16             MR. BURGER:  Your Honor, the Court of Appeals in
17   Williams v. Williams differs with that and states that when any
18   person maliciously institutes a judicial proceeding alleging
19   false and defamatory charges and then circulates a press
20   release or other communication based thereon cannot escape
21   liability by invoking the statutes.  Williams v. Williams,
22   1969.
23             THE COURT:  If one makes allegations in a complaint
24   that is not necessary to sustain a cause of action and is done
25   for the purpose of injuring another, Williams applies.  But if

C5VHBHAC

1   the cause of action is stated and requires an allegation of
2   this nature and it is related to the cause of action, a person
3   is free to make it and the newspaper is free to report it and a
4   lawyer is free to comment as long as he or she confines the
5   comments to the record.  Here the record is the allegation that
6   supports the statement.
7           MR. BURGER:  The quotations in the counterclaim state
8   that the statements went beyond the allegations of the
9   complaint.
10          THE COURT:  The statement here is expressly illegal
11  for any employer to take a worker's passport.  That is in the
12  complaint.  What is outside the complaint?
13          MR. BURGER:  All of the allegations --
14          THE COURT:  The next paragraph says she also alleged
15  that on one occasion Dayal told her she could only have the
16  additional money if she gave him a massage.  That is in the
17  complaint.
18          MR. BURGER:  And that was withdrawn.
19          THE COURT:  Maybe it was withdrawn, but it doesn't
20  necessarily mean it is not in the cause of action.
21          MR. BURGER:  So anyone can plead anything in an
22  original complaint so long as it is withdrawn and therefore
23  escape any liability even if it is absolutely false and
24  defamatory.
25          THE COURT:  We will see what is false in the nature of

```
 1   the lawsuit.  We have a lawsuit.  It is not the basis of an
 2   action for defamation.  The counterclaim is stricken.  The
 3   motion is granted.
 4            So we have this cause of action.  It alleges very
 5   serious matters.  The case has been pending here for over a
 6   year.  There has been no discovery.  How long is it going to
 7   take you to finish your discovery?
 8            MS. CACACE:  Your Honor, we had originally, before
 9   there was some of this motion practice, asked for four months
10   for discovery.
11            THE COURT:  I am not going to give it to you.  It is
12   too late.  You have 60 days.
13            MS. CACACE:  That is fine for us.  We are happy to
14   move quickly.
15            THE COURT:  Mr. Burger, can you do it in 60 days?
16            MR. BURGER:  Yes.
17            THE COURT:  There is no priority.  Whoever wants to
18   depose another deposes another.  I don't think we have any
19   documents to worry about in the case, so let's not get involved
20   with interrogatories and document demands.  Go right to
21   depositions.  Take whoever you need.  There can't be very many
22   people, and get it ready.
23            MS. CACACE:  I don't think there are very many
24   depositions, your Honor, and we don't need to hold up the
25   depositions for this, but we would also like to submit
```

1    discovery requests.

2            THE COURT:  What kind of discovery requests?

3            MS. CACACE:  To see if there are any documents.  The
4    defendants were required to keep records of Ms. Bhardwaj's
5    hours and pay and we would like to know if they exist.

6            THE COURT:  That is legitimate.  Why don't you write a
7    letter to Mr. Burger stating whatever you need, and it can't be
8    many more than five or six items, and Mr. Burger will supply
9    those.

10           What do you need of the plaintiffs, Mr. Burger?
11   Anything?  Write a letter.  Don't get stuck on Rule 34 requests
12   and go immediately to your depositions.  This case has been
13   around.  I will see you the second Friday in August.

14           All discovery must end completely by the end of July.
15   The second Friday is August 10, 10:00, status conference.  We
16   will talk about what we need to try the case and I will set a
17   trial date very shortly after that.

18           MS. CACACE:  Thank you, your Honor.

19           THE COURT:  You are all finished, right, Mr. Abrams?

20           MR. ABRAMS:  I just want to be clear that you have
21   stricken the counterclaims against all defendants.

22           THE COURT:  Right.  Your client is not in the case.
23   Very eloquent argument.

24           MR. ABRAMS:  Thank you.

25           THE COURT:  Thanks very much.   (Adjourned)